Joseph Lavi, Esq. (State Bar No. 209776)
jlavi@lelawfirm.com
Jordan D. Bello, Esq. (State Bar No. 243190)
jbello@lelawfirm.com
Elizabeth Harrier (State Bar No. 319550)
eharrier@lelawfirm.com
**LAVI & EBRAHIMIAN, LLP**
8889 W. Olympic Blvd., Suite 200
Beverly Hills, California 90211
Telephone: (310) 432-0000
Facsimile: (310) 432-0001

Sahag Majarian II, Esq. (SBN 146621)
Email: sahagii@aol.com
Garen Majarian, Esq. (SBN 334104)
Email: garen@majarianlawgroup.com
**Majarian Law Group, APC**
18250 Ventura Boulevard
Tarzana, California 91356
Telephone: (818)609-0807
Facsimile: (818) 609-0892

Attorneys for PLAINTIFF
JUAN MANUEL TEJEDA on behalf of himself and
others similarly situated.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN MANUEL TEJEDA, on behalf of himself and others similarly situated,<br><br>PLAINTIFF,<br><br>vs.<br><br>VULCAN MATERIALS COMPANY; CALMAT COMPANY; AND DOES 1-100, INCLUSIVE,<br><br>DEFENDANTS. | Case No.: 23-cv-00619-JCS<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**<br><br>Date: April 19, 2024<br>Time: 9:30 a.m.<br>Courtroom:    D<br><br>Judge: Hon. Joseph C. Spero |

## **TABLE OF CONTENTS**

I.    ISSUES RAISED BY THE COURT.................................................................................1

       A.    The Parties Have Dismissed Vulcan Materials Company Without Prejudice ...............................................................................................................................1

       B.    The Scope Of Plaintiff's Action Is Limited To February 12, 2022 .........................2

       C.    Defendant's Evidence Does Not Establish The Proffered CBA Governs Plaintiff's Work As A Mobile Sweeper Driver............................................................2

II.    PLAINTIFF'S RESPONSE TO DEFENDANT'S REPLY ......................................3

       A.    Plaintiff's Claim For Minimum Wage Is Not Preempted Because It Does Not Require Interpretation of the CBA ........................................................................3

       B.    Plaintiff's Claim For Meal Periods Is Not Preempted Because Defendant Does Not Establish Plaintiff's Work As A Mobile Sweeper Is Exempt...................8

           1.  Defendant presents no evidence of a CBA covering Plaintiff's employment as a mobile sweeper driver ...............................................9

           2.  Defendant presents no evidence Plaintiff was an exempt commercial driver....................................................................................................9

           3.  Plaintiff is not an exempt employee in a "construction occupation" .................11

       C.    Plaintiff's Claim For Rest Periods Is Not Preempted Because Plaintiff's Work As A Mobile Sweeper Drive Is Covered By Wage Order 1, Not Wage Order 16 ........................................................................................................13

       D.    Because Plaintiff's Meal And Rest Break Claims Are Not Exempt, They Are Based On California law And Not Based On The CBA ...................................14

       E.    Plaintiff's Meal Period Claim Does Not Require Interpretation Of The CBA's On-Duty Meal Period Provision....................................................................14

       F.    Plaintiff's Meal And Rest Break Claims Are Not Preempted By The FMCSA .....................................................................................................................14

       G.    Because Plaintiff's Claims Are Not Preempted, His Derivative Claims Do Not Fail.....................................................................................................................15

       H.    Because Plaintiff's Claims Are Not Preempted, The Court Cannot Order Plaintiff To Submit His Claims To the CBA's Mandatory Grievance Procedure..............................................................................................................15

III.    CONCLUSION...............................................................................................................15

i

# TABLE OF AUTHORITIES

**Pages**

## Cases

*Alaska Airlines, Inc. v. Schurke,*
    898 F.3d 904 (9th Cir. 2018)....................................................................................................3

*AHMC Healthcare, Inc. v. Superior Court,*
    24 Cal.App.5th 1014 (2018)....................................................................................................

*Alvarado v. Dart Container Corp of California,*
    4 Cal.5th 542 (2018)...............................................................................................................9

*Avila v. Kiewitt Corp.,*
    No. 2:19-cv-1295-SK, 2021 U.S. Dist. LEXIS 199128 (C.D. Cal. June 17, 2021)..........4, 7

*Burnside v. Kiewit Pac. Corp.,*
    491 F.3d 1053 (9th Cir. 2007)................................................................................................8

*Camp v. Home Depot U.S.A., Inc.,*
    84 Cal.App.5th 638 (2022)..............................................................................................5, 6

*Camp v. Home Depot U.S.A., Inc.,*
    *pet. for rev. granted,* 304 Cal. Rptr. 3d 82 (Feb. 1, 2023) ..........................................6, 7, 12

*Cornn v. United Parcel Serv., Inc.,*
    2004 U.S. Dist. LEXIS 20578, 2004 WL 2271585 (N.D. Cal. Oct. 5, 2004)...............3, 4, 5

*Ferguson v. Randy's Trucking, Inc.,*
    2016 U.S. Dist. LEXIS 155112 (Cal. E.D. Nov. 7, 2016) ...................................................12

*Giles v. Canus Corp.,*
    2022 U.S. Dist. LEXIS 146789, 2022 WL 3370793 (N.D. Cal. Aug. 16, 2022)..............5, 6

*Lingle v. Norge Div. of Magic Chef,*
    486 U.S 399 (1988) ...........................................................................................................7, 8

*Livadas v. Bradshaw,*
    512 U.S. 107 (1994) ...............................................................................................................3

*Lopez v. W. Coast Arborists, Inc.,*
    2024 U.S. Dist. LEXIS 17837 (E.D. Cal. Feb. 1, 2024) .....................................................13

*McGhee v. Tesoro Ref. & Mktg. Co.*,
    440 F. Supp. 3d 1062 (N.D. Cal. 2020) ...............................................................................7

*Mejia v. DHL Express (USA), Inc.,*

ii

No. CV-15-890-GHK (JCx), 2016 U.S. Dist. LEXIS 191931 (C.D. Cal. Feb. 25, 2016)..............................................................................................................................7

*Meyer v. Irwin Industries Inc.*,
    723 F.Supp.2d 1237 (C.D. Cal. 2010)................................................................7

*Plagakis v. Outsource Util. Constructor Corp.*,
    2023 U.S. Dist. LEXIS 221107 (Cal. E.D. Dec. 11, 2023)...............................13

*Pyara v. Sysco Corp.*,
    No. 15-cv-01208-JAM-KJN, 2016 U.S. Dist. LEXIS 94892 (E.D. Cal. July 20, 2016)..........................................................................................................4, 7

*Ramirez v. Yosemite Water Co.*,
    20 Cal.4th 785 (1999)..................................................................................9, 11

*Rodriguez v. Gonsalves & Santucci, Inc.*,
    2022 WL 161892 (N.D. Cal. Jan. 18, 2022) ....................................................4, 6

*See's Candy Shops, Inc. v. Superior Court*,
    210 Cal.App.4th 889 (2012)............................................................................7

*Shwiyat v. Martin Marietta Materials, Inc.*,
    2023 U.S. Dist. LEXIS 226843 (N.D. Cal. Dec. 20, 2023) ..........................11, 12

*Southern Calif. Gas Co. v. City of Santa Ana*,
    336 F. 3d 885 (9th Cir. 2003)...........................................................................8

*Stone v. Sysco Corp.*,
    2016 U.S. Dist. LEXIS 154424 (E.D. Cal Nov. 4, 2016) ...................................11

*Troester v. Starbucks Corp.*,
    5 Cal.5th 829 (2018)......................................................................................7, 9

*Walling v. General Industries Co.*,
    330 U.S. 545 (1947) ..........................................................................................8

*Woodworth v. Loma Linda University Medical Center*,
    93 Cal.App.5th 1038, 1054-1057 (2023) *pet. for rev. granted*, 314 Cal.Rptr.3d 491 (Nov. 1, 2023) ............................................................................................6

**Statutes, Rules, and Regulations**

Cal. Bus. & Prof. Code
    §§ 7025-7035............................................................................................11, 13
    § 7026.1 ..........................................................................................................13

Cal. Lab. Code

 § 226, subd. (a)..............................................................................................14
 § 512, subd. (e).........................................................................................9, 11
 § 512, subd. (f)...............................................................................................11
 § 512, subd. (f)(2)............................................................................................9
 § 512, subd. (g)(1)...........................................................................................9
 § 512, subd. (g)(2).........................................................................................11
 § 1174, subd. (d)..............................................................................................4
 § 1194...............................................................................................................7
 § 1194, subd. (a)..............................................................................................4
 § 1197...............................................................................................................4
 § 1198...............................................................................................................4

Cal. Veh. Code

 § 260.................................................................................................................9
 § 260, subd. (a)..............................................................................................10
 § 353...............................................................................................................10
 § 462..........................................................................................................9, 10
 § 15210, subd. (b)............................................................................................9
 § 15278, subd. (2)..........................................................................................10
 § 15278, subd. (3)..........................................................................................10
 § 15278, subd. (4)..........................................................................................10
 § 15278, subd. (5)..........................................................................................10

Wage Order 1

 § 2(G)..........................................................................................................4, 7
 § 4.....................................................................................................................4
 § 4(A)(1)...........................................................................................................7
 § 7(a)(3)............................................................................................................4

Wage Order 16

 § 11................................................................................................................13

**SUPPLEMENTAL BRIEF ISO OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT; 23-cv-00619-JCS**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    ISSUES RAISED BY THE COURT

### A.    The Parties Have Dismissed Vulcan Materials Company Without Prejudice

At the April 19, 2024, hearing, the court asked that the parties include a statement in the supplemental briefing regarding who is Plaintiff's employer and specifically whether Vulcan Materials Company should be dismissed from the action.

During Plaintiff's employment, portions of Plaintiff's employment records, including Plaintiff's wage statements, listed the business names "Vulcan Materials Company" and/or "Calmat Company" as Plaintiff's employer. (*See e.g.,* Dkt. 39 (wage statements listing both), 39-3 (offer letter), 39-4 (termination letter), 39-9 (on-duty meal period agreement).) Following the filing of the Complaint, Defendant explained that CalMat Co. was Plaintiff's employer and identified as "Calmat Company" on Plaintiff's wage statements. (Dkt. 38-1 at 2 ¶¶ 2, 4.)  In its discovery responses, Defendant explained that "Vulcan Materials Company," as the name appeared on employment documents, is the fictitious business name of CalMat Co. and that CalMat Co. has registered "Vulcan Materials Company" as its DBA in Sacramento County. (Dkt. 38-1 at 3 ¶ 5; Dkt. 39-2 (printout of DBA search results for Calmat Co.); Suppl. Bello Decl. Ex. 5 at 3-4.)

As a result of the foregoing, the parties submitted a stipulation dismissing "Vulcan Materials Company" from the action without prejudice. (Dkts. 48[1], 51.)

### B.    The Scope Of Plaintiff's Action Is Limited To February 12, 2022, On

At the April 19, 2024, hearing, the court asked that Plaintiff include a statement in the briefing regarding the temporal scope of Plaintiff's action, specifically, whether Plaintiff's action is limited to the time period alleged in the complaint: February 12, 2022 to the present.

A superior court of California for the County of San Diego entered judgment finally approving a class and PAGA settlement in a case titled Guzman v. Vulcan Materials Company, San Diego Superior Court Case Number 37-2021-00024583-CU-OE-CTL. The judgment released overlapping claims through February 11, 2022. (Suppl. Req. Judicial Notice (Suppl. RJN) Ex. 1 at 1, 3-4.)

As a result, Plaintiff limits the lawsuit to February 12, 2022, to the present.

---

[1] On April 24, 2024, Plaintiff filed a stipulation to dismiss Vucan Materials Company" from the action without prejudice. (Dkt. 48.) However, upon review, the stipulation inadvertently did not include signatures. Plaintiff refiled the corrected stipulation on May 2, 2024. (Dkt. 51.)

1

SUPPLEMENTAL BRIEF ISO OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT; 23-cv-00619-JCS

### C.     Defendant's Evidence Does Not Establish The Proffered CBA Governs Plaintiff's Work As A Mobile Sweeper Driver

At the April 19, 2024, hearing, the court asked that the parties include a statement in the briefing regarding whether the evidence shows which collective bargaining agreement applied to Plaintiff prior to February 12, 2022, and after February 12, 2022, and specifically whether the evidence showed the CBA covered Plaintiff's employment as a mobile sweeper driver.

Regarding the court's specific question, Defendant's evidence does not establish Exhibit H to the Miller Declaration covers mobile sweeper drivers. As noted by the court, Exhibit H denotes that it applies to specified locations, including Petaluma, where Plaintiff was based; however, the CBA states that it covers "the employment of workers in the classifications hereinafter set forth" (Dkt. 39-8 at 2 ¶ 1) and the agreement does not list mobile sweeper drivers as a classification of workers covered by the CBA (Dkt. 39-8 at 6-7). Instead, the classifications are limited to: Dump trucks, Flat Racks, & Concrete Mixer Trucks; Misc. Employees defined to include "Batch-man" and "Loader Operators" at the Cloverdale location only; Teamsters Mechanic and Truck Repairman; and Truck Washer and Servicer defined to include Washers, Lubbers, Oilers and Greasers. (Dkt. 39-8 at 6-7.) Thus, it does not appear that based on the language of the CBA, it covers "Driver Mobile Sweeper," the position which Plaintiff was assigned since November 2020. (Dkt. 42-1 at 6, 21.)

Based on this absence of evidence, on the question posed at the hearing whether Plaintiff would stipulate that Exhibit H covered his work as a mobile sweeper driver, Plaintiff would not stipulate that he was covered by the specific CBA presented as Exhibit H to the Miller Declaration.

Plaintiff does not have evidence that establishes the CBA produced as Exhibit H governs Plaintiff's employment as a mobile sweeper driver. Plaintiff has an understanding regarding his union membership, but not what CBA governed his employment. It is Plaintiff's understanding that, although his initial offer letter mentions employment at Petaluma and membership in the Local 665 union, he actually began his employment in Napa for which Teamsters Union Local 315 was affiliated with that location. Thus, his association with Local 315 was based on his employment at Defendant's Napa concrete manufacturing plant until the end of June 2020 when he was transferred to Petaluma concrete manufacturing plant.

It is Plaintiff's understanding that his association changed from Local 315 to Teamsters Union Local 665 when he was transferred to Defendant's Petaluma concrete manufacturing plant at the end

of June 2020. Plaintiff worked from the Petaluma concrete plaint for the remainder of his employment with Defendant. (Dkt. 42-1 at 6-7 ¶ 3 (Pl. explaining his employment as a mobile sweeper starting in 11/2020 at Petaluma concrete plant and two or three other local plants cleaning debris at Defendant's concrete manufacturing operations).)  Plaintiff does not have a copy of any collective bargaining agreement with Defendant to determine to what CBAs exist or covered his employment with Defendant as a mobile sweeper driver.

Accordingly, during the time at issue in this lawsuit, Plaintiff would agree that the CBA for Teamsters Union Local 665 produced as Exhibit H governed his duties as *a ready-mix driver*, which was limited to once or twice a month, but cannot agree that the CBA covered his employment as a mobile sweeper driver, his primary position during the relevant period. And as noted in the opposition, Plaintiff would exclude his employment as a ready-mix driver from his claims.

## II. PLAINTIFF'S RESPONSE TO DEFENDANT'S REPLY

### A. Plaintiff's Claim For Minimum Wage Is Not Preempted Because It Does Not Require Interpretation of the CBA

In its reply, Defendant continues with its argument first asserted in its motion that Plaintiff's claim for minimum wage based on rounding requires interpretation of the CBA because the CBA provides for rounding "in one-quarter (1/4) hour increments." (Dkt. 44 at 9-10 (citing *Cornn v. United Parcel Serv., Inc.,* 2004 WL 2271585 (N.D. Cal. Oct. 5, 2004) from Dkt. 38 supporting its claim that the CBA must be interpreted because the CBA provides for rounding).) As Plaintiff explained in his opposition and incorporates here, there is no merit to this argument for multiple reasons including: (1) that rounding is not permissible under California law; (2) that even if rounding were permitted and needed to be evaluated to see whether the rounding complied with *See's Candy,* the rounding parameters at issue can be determined from the parameters programmed into Defendant's Kronos time keeping system without any reference to the CBA and compared against the standards of California law, not the CBA; and (3) there is no active dispute regarding whether Defendant applied quarter hour rounding which would require interpretation of the CBA rather than consultation because Defendant contends, and Plaintiff does not dispute, that the language provides for quarter hour rounding (Dkt. 38-1 ¶ 14; *Alaska Airlines, Inc. v. Schurke,* 898 F.3d 904, 921 (9th Cir. 2018) ("claims are only preempted to the extent there is an active dispute over 'the meaning of contract terms.' *Lividas* [*v. Bradshaw,* 512 U.S. 107, 124 (1994)].")). (Dkt. 42 at 6-10.)

3

**SUPPLEMENTAL BRIEF ISO OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT; 23-cv-00619-JCS**

Defendant argues that the cases of *Cornn v. United Parcel Serv., Inc.,* 2004 U.S. Dist. LEXIS 20578 (N.D. Cal. Oct. 5, 2004), *Giles v. Canus Corp.,* 2022 WL 3370793 (N.D. Cal. Aug. 16, 2022), and *Rodriguez v. Gonsalves & Santucci, Inc.,* 2022 WL 161892, at * 5 (N.D. Cal. Jan. 18, 2022) support its argument that a rounding claim would require interpretation of the CBA. (Dkt. 44 at 9-10.) But to begin its argument, Defendant mislabels Plaintiff's rounding claim as an "off the clock" claim and argues that in the aforementioned cases the courts held that the "off the clock" claims required interpretation of the CBA and were preempted[2]. (Dkt. 44 at 9:17-22.) Contrary to Defendant's attempt to misconstrue Plaintiff's claim, Plaintiff's minimum wage claim is not an "off the clock" claim. Plaintiff alleges Defendant's improper rounding of compensable time resulted in violation of California's minimum wage laws. Specifically, Plaintiff alleges that Defendant used a timekeeping system to record the exact amounts of employees' compensable time but used "rounding" which resulted in the failure to pay employees any wages for the rounded recorded compensable time in violation of California's minimum wage statutes, Labor Code sections 1194(a), 1197, 1198 and Wage Order 1 §§ 2(G), 4. This conclusion is supported by the fact that California law requires that Defendant record all employees' compensable hours worked. Cal. Lab. Code § 1174, subd. (d); Wage Order 1 § 7(a)(3). To further this legal requirement, Defendant adopted a policy requiring employees to record all compensable time, making clear that all time reflected in the employees' time cards constitutes compensable "hours worked":

> If you are a nonexempt/hourly employee, you must record your actual time worked for payroll and benefit purposes. You must record the time work begins and ends, as well as the beginning and ending time of any departure from work for any non-work-related reason, on forms as prescribed by management. No supervisor or manager has any authority to direct you to incorrectly record time worked.

(Suppl. Bello Decl. Ex. 7[3]; *see* Suppl. Bello Decl. Ex. 6 at 11 (Def.'s response indicating it produced its only handbook in effect during class period with bates numbers matching Ex. 7).) As noted by

---

[2] Simply because an "off the clock" claim is alleged and a CBA exists does not mean the claims are automatically preempted. Each case and the language of the CBA must be evaluated separately. This is evidenced by "off the clock" cases involving a CBA (cited by Defendant) where the courts found no preemption and no requirement that the claims interpret the CBA. (*See* Dkt. 42 at 9-10 (explaining that cases cited by Defendant, *Avila v. Kiewitt Corp.,* No. 2:19-cv-1295-SK, 2021 U.S. Dist. LEXIS 199128, at *8-9 (C.D. Cal. June 17, 2021) and *Pyara v. Sysco Corp.,* No. 15-cv-01208-JAM-KJN, 2016 U.S. Dist. LEXIS 94892, at *15-16 (E.D. Cal. July 20, 2016), involve off the clock claims and CBAs but court found no preemption.

[3] Redactions in the handbook were applied by Defendant prior to production.

4

the court at the April 19, 2024, hearing, Defendant presented no evidence to support its argument that any of the time recorded by the time keeping system was not compensable time. And Defendant could not do so because its policy dictated that recorded time was compensable. Thus, Plaintiff's minimum wage claim is not an "off the clock" claim as alleged by Defendant. It is exactly the type of rounding claim at issue and found to be illegal in *Camp v. Home Depot U.S.A., Inc.,* 84 Cal.App.5th 638, 656-660 (2022)*,* where the company used a "Kronos" timekeeping system to record the time to the minute the employee punched in and out for work time and applied a quarter-hour rounding policy to the employee's shift time.  In addition, the cases cited by Defendant do not support Defendant's argument that Plaintiff's rounding claim requires interpretation of the CBA.

Defendant argues that its primary case to support its argument is *Cornn v. United Parcel Serv., Inc.* (Dkt. 44 at 10.) But *Cornn* has no relevance to the court's analysis of Plaintiff's minimum wage rounding claim. In *Cornn,* the plaintiffs appeared to sue the defendant for their unpaid contractual wages for each day's work, not minimum wage or rounding. *Cornn, supra,* 2004 U.S. Dist. LEXIS 20578, at *4-5. The *Cornn* plaintiffs relied on Labor Code sections 222 and 223 to establish their right to unpaid wages, but the court noted that those Labor Code sections plaintiffs relied upon only give the right to "agreed upon" wages which were defined by the CBA. *Id.* The court found this required the court to interpret the CBA's provision for payment of a "fair day's work for a fair day's pay" which set forth the scope of work and other terms and conditions of employment affecting the wages owed. *Id.* (citing plaintiffs' reliance on Labor Code section 222 making it unlawful to withhold "agreed upon" wages and Labor Code section 223 making it unlawful to pay wages less than the wages provided by contract). *Id.*

Defendant also cites *Giles v. Canus Corp* for support. (Dkt. 44 at 10.) *Giles* involved a plaintiff suing for, *inter alia,* minimum wage for "off the clock" work including time spent working during his meal period, undergoing mandatory drug testing and other testing, and submitting to mandatory screening questions prior to clocking in. *Giles, supra,* 2022 U.S. Dist. LEXIS 146789, at *12-13. The court held that the CBA had provisions providing for pay for "actual time worked" and providing for "show up pay" and needed to be interpreted to determine whether the plaintiff's off the clock wages were compensated. *Id.* This case is not analogous to *Giles* where the CBA must be interpreted to determine whether wages were paid for the "off the clock" time. Unlike *Giles*, Plaintiff's state law claim can be determined by evidence completely separate from the CBA. As

5

**SUPPLEMENTAL BRIEF ISO OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT; 23-cv-00619-JCS**

explained in Plaintiff's Opposition (Dkt. 42 at 6-10), the CBA's providing for quarter hour rounding does not require interpretation because rounding is not permitted under California law (*Camp, supra,* 84 Cal.App.5th at 648-661; *Woodworth v. Loma Linda University Medical Center,* 93 Cal.App.5th 1038, 1054-1057 (2023) *pet. for rev. granted,* 314 Cal.Rptr.3d 491 (Nov. 1, 2023)) and even if rounding was permitted under the standards of *See's Candy*, as argued by Defendant, it would still require an analysis under the standards of *See's Candy*, *i.e.*, whether the rounding is neutral and even if neutral, how the rounding affected employees over time. *See e.g., AHMC Healthcare, Inc. v. Superior Court,* 24 Cal.App.5th 1014, 1024-1028 (2018) (applying *See's Candy* analysis to see whether even if rounding is neutral, how it affected employees over time). As noted in the Opposition, this determination would be based on evidence outside of the CBA, i.e., by looking at the rounding parameters programmed in Defendant's Kronos time-keeping system and analyzing the time cards and payroll information to determine what time was paid and unpaid and whether the system benefited or underpaid employees' over time. (Dkt. 42 at 7-8.)

Defendant also cites *Rodriguez v. Gonsalves & Santucci, Inc.* for support. (Dkt. 44 at 10.) Similar to *Giles,* a plaintiff sued for, *inter alia,* minimum wage for "off the clock" work such as driving or making phone calls. *Rodriguez, supra,* 2022 U.S. Dist. LEXIS 8645, at *12-13. Like *Giles,* the court held that the CBA provided wages for "actual hours worked" and "show up expenses" which required interpretation to determine whether the times the plaintiff alleges were unpaid were in fact paid with wages. *Id.* Accordingly, the reasons set forth immediately above why *Giles* is not applicable here equally apply to *Rodriguez.*

Defendant next argues that Plaintiff's contention—that the rounding claim can be evaluated by looking to the rounding parameters programmed in the Kronos system, timecards, and payroll records, without consultation with the CBA—is premised on the grounds that rounding is not permissible at all. (Dkt. 44 at 10-11.) Defendant then argues that *Camp* did not disapprove of rounding under the circumstances of this case. (Dkt. 44 at 11.) Defendant is wrong on both counts. Plaintiff does argue that the rounding claim can be evaluated by looking outside of the CBA. But Plaintiff argues looking to these records would apply if rounding is not permitted by California law, i.e., to determine rounding occurred and damages; *or* if rounding is permitted by *See's Candy*, i.e., to determine the parameters for rounding and to determine whether, even if neutral, they "result, over a period of time, in failure to compensate the employees properly for all the time they have

actually worked." *See's Candy Shops, Inc. v. Superior Court,* 210 Cal.App.4th 889, 907 (2012).

And contrary to Defendant's contention otherwise, *Camp* did disapprove of the use of rounding under the circumstances of this case. At page 660 of its decision, the court stated, under circumstances identical to here, in relation to Home Depot's application of a quarter hour rounding policy when employees' work time was recorded to the minute in Home Depot's Kronos' system, that "[u]nder the guidance and direction of *Troester* and *Donohue*, which we must follow as an intermediate court … if an employer, as in this case, can capture and has captured the exact amount of time an employee has worked during a shift, the employer must pay the employee for 'all the time' worked." *Camp, supra,* 84 Cal.App.5th at 660. Defendant admits that it used the Kronos system programmed with quarter hour rounding (Dkt. 38-1 at 5 ¶ 14) and Defendant's policy makes clear that all recorded time is compensable (Suppl. Bello Decl. Ex. 7).

Defendant also cites cases, already cited in its motion, of *Avila, supra,* 2021 U.S. Dist. LEXIS 199128, at *8-9, *Pyara, supra,* 2016 U.S. Dist. LEXIS 94892, at *15-16, and *Mejia v. DHL Express (USA), Inc.,* No. CV-15-890-GHK (JCx), 2016 U.S. Dist. LEXIS 191931, at *7-10 (C.D. Cal. Feb. 25, 2016). But Plaintiff has set forth in his Opposition why these cases do not support Defendant's argument in this case. (Dkt. 42 at 9-10.)

Finally, for the first time in reply, Defendant argues that the CBA requires interpretation to litigate Plaintiff's claims because it states that "[t]he period of working time within the meaning of this Agreement shall be from the time the employee starts work until the employee stops work." (Dkt. 44 at 12.) There is no merit to Defendant's assertion that this term requires interpretation. Plaintiff's rounding claim is based on a non-waivable statutory right and Defendant's policy and California law require that Defendant pay employees for all of the time that they work, which Defendant's policy requires to be recorded to the minute. (Bello Decl. Ex. 7; Wage Order 1 §§ 4(A)(1), 2(G) (requiring an employer to pay wages for all hours worked); *Troester v. Starbucks Corp.,* 5 Cal. 5th 829, 841-848 (2018) (finding the de minimis doctrine does not apply to California law, California law requires that employees are paid for all hours worked, California law is concerned with "small things," and that an employer must compensate employes for regularly occurring small amounts of time).) As already explained in the Opposition, Plaintiff's claim does not require interpretation of the CBA just because the CBA may provide for parallel protections to that of California law. (Dkt. 42 at 7-8 (citing cases, *Meyer, Lingle, McGhee,* which explain that

when a claim is based on a non-waivable statutory right the fact the CBA provides for parallel productions does not mean it requires interpretation of the CBA.)

In fact, in *Burnside v. Kiewit Pac. Corp.,* 491 F.3d 1053, 1071 (9th Cir. 2007), the case which is commonly cited as setting forth the method of analysis of LMRA preemption in the Ninth Circuit, the defendant made a similar argument which the *Burnside* court rejected. In *Burnside,* the plaintiffs had sued for unpaid wages for unpaid mandatory travel time spent by employees traveling from designated meeting sites to their jobsites and from the jobsites back to the designated meeting sites. *Id.* at 1055. The defendant argued that the claims required interpretation of the terms of the CBA and were preempted because the CBA provided that "[t]he Contractor shall be responsible for payment of wages from the reporting point … to the jobsite and from job-to-job and return." *Id.* at 1071. The *Burnside* court rejected the argument that the plaintiff's claims for compulsory travel required interpretation of that provision of the CBA. The court stated:

> By specifying that "[t]he Contractor shall be responsible for payment of wages from the reporting point … to the jobsite and from job-to-job and return," Agreements 1, 4, and 5, at best, merely confirm that they confer upon employees the same right already conferred upon them by state law. As the Court explained in *Lingle,* "[T]he mere fact that a broad contractual protection … may provide a remedy for conduct that coincidently violates state-law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract." *See* [*Lingle v. Norge Div. of Magic Chef,*] 486 U.S. [399,] at 412-13.

*Burnside, supra,* 491 F.3d at 1071. Similarly, here, Plaintiff's claim is based on non-waivable statutory rights and, if rounding analysis is required following the Supreme Court's decision in *Campos,* the claim can be determined from the parameters in the Kronos system and analysis of payroll records and time cards. The fact that the CBA may provide for rights which are already guaranteed under California law does not require interpretation of the CBA for Plaintiff's claims.

**B.     Plaintiff's Claim For Meal Periods Is Not Preempted Because Defendant Does Not Establish Plaintiff's Work As A Mobile Sweeper Is Exempt**

Defendant argues for the first time in its reply that Plaintiff's employment as a mobile sweeper driver is subject to the exemption of Labor Code section 512(e) as a commercial driver or construction worker. But as noted in the opposition, Defendant bears the burden of proving an exemption (*Walling v. General Industries Co.,* 330 U.S. 545, 547-548 (1947)) and bears the burden of establishing "beyond controversy every essential element of its" exemption defense (*Southern*

8

**SUPPLEMENTAL BRIEF ISO OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT; 23-cv-00619-JCS**

*Calif. Gas Co. v. City of Santa Ana,* 336 F.3d at 888). In addition, because Defendant relies on attempting to establish an exemption, California law requires that exemptions are *narrowly construed* because the state's labor laws are to be liberally construed in favor of worker protection. *Ramirez v. Yosemite Water Co.,* 20 Cal.4th 785, 794 (1999) ("Exemptions from statutory mandatory overtime provisions are narrowly construed."). And courts "are obligated to prefer an interpretation that discourages employers from imposing overtime work and that favors the protection of the employee's interests." *Alvarado v. Dart Container Corp of California,* 4 Cal.5th 542, 561-562 (2018); *see Troester, supra,* 5 Cal.5th at 839 (must interpret statutes and wage orders to protect employees.)

Defendant fails to satisfy its burden to present evidence to establish Plaintiff is exempt as mobile sweeper driver under Labor Code section 512(e). Defendant's sole evidence relating to Plaintiff's employment as a mobile sweeper driver is a document purporting to set forth the company's general job duties of a mobile sweeper driver. (Dkt. 45 at 2-5.)

### 1. Defendant presents no evidence of a CBA covering Plaintiff's employment as a mobile sweeper driver

The initial requirement for exemption for commercial drivers or construction occupations under Labor Code section 512(e), requires that the employee is covered by a CBA and the CBA provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate. As noted by the court, the CBA produced by Defendant does not cover mobile sweeper drivers and does not provide for mobile sweeper drivers wages, hours of work, and working conditions of employees, or the other requirements of Labor Code section 512(e). Thus, Defendant fails in producing evidence satisfying the initial requirement.

### 2. Defendant presents no evidence Plaintiff was an exempt commercial driver

Further, to prove exemption as a commercial driver, the defendant must present evidence that the employee operates a vehicle described in Vehicle Code section 260, 462, or 15210(b). Cal. Lab. Code § 512(f)(2), (g)(1). Defendant argues that Plaintiff, in his opposition, did not prove that Plaintiff is not exempt. (Dkt. 44 at 4.) But the exemption is an affirmative defense which Defendant must

9

**SUPPLEMENTAL BRIEF ISO OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT; 23-cv-00619-JCS**

prove. The sole evidence that Defendant contends establishes Plaintiff was an exempt commercial driver is Defendant's job description, which states that the employee must possess a commercial driver's license. But the exemption is based on whether California law requires the type of commercial license defined by the Vehicle Code, not an employer's policies.

Vehicle Code section 260 defines a "commercial vehicle" as "used or maintained for the transportation of persons for hire, compensation, or profit or designed, used, or maintained primarily for the transportation of property." Cal. Veh. Code § 260(a). Defendant presents no evidence a mobile sweeper truck, used to clean up concrete at Defendant's concrete manufacturing facility (Dkt. 42-1 ¶ 3), is used primarily to transport persons or property for hire (which it is not).

Vehicle Code section 462 describes passenger vehicles operated for hire. (Cal. Veh. Code § 462.) Defendant presents no evidence a mobile sweeper truck qualifies as a passenger vehicle operated for hire.

Vehicle Code section 15210(b) describes a commercial vehicle that requires a commercial class A license, commercial class B license, or a commercial class C license with an endorsement issued pursuant to Vehicle Code section 15278, (2), (3), (4), or (5).

A commercial class C license with an endorsement issued pursuant to Vehicle Code section 15278(2), (3), (4), or (5) is required for a passenger transportation vehicle used to carry more than 10 persons; a schoolbus; a tank vehicle; or a vehicle carrying hazardous materials as defined in Vehicle Code section 353, e.g., explosives or medical waste. Cal. Veh. Code §§ 15278(2), (3), (4), or (5), 353. Defendant presents no evidence or argument that a mobile sweeper truck qualifies and requires a class C license with such endorsement.

A commercial class A or B license is required for a single vehicle with a gross vehicle weight rating ("GVWR") or gross vehicle weight ("GVW") of more than 26,000 pounds; a combination of vehicles with a gross combined weight of 26,0001 pounds or more; a 3 or more axle vehicle weighing over 6,000 pounds; a bus with a gross vehicle weight rating of more than 26,000 pounds; a vehicle towing a trailer or other vehicle with a GVWR of 10,001 pounds or more;  a farm labor vehicle with endorsement. Supp. RJN Ex. 3 at 5 (California DMV Commercial Driver handbook providing description of what vehicles require a Commercial Class A, B, or C license). Defendant presents no evidence regarding the weight of the vehicle or that the vehicle otherwise requires a commercial class A or B license as a mobile sweeper driver.

1    Defendant notes that courts take a broad view on categorizing employees as exempt. However,

2    this contention violates California law which holds that exemptions are narrowly construed, not

3    broadly construed. *Ramirez, supra,* 20 Cal.4th at 794 ("Exemptions from statutory mandatory

4    overtime provisions are narrowly construed.").

5    Defendant cites *Shwiyat v. Martin Marietta Materials, Inc.,* 2023 U.S. Dist. LEXIS 226843,

6    at *13-14 (N.D. Cal. Dec. 20, 2023) and *Stone v. Sysco Corp.,* 2016 U.S. Dist. LEXIS 154424, at

7    *2, 16-17 (E.D. Cal Nov. 4, 2016) for support that Plaintiff's employment as a mobile sweeper driver

8    is exempt, but neither of those cases involved mobile sweeper drivers cleaning up concrete at a

9    manufacturing plant. As explained above, Defendant fails to present evidence, as is required on a

10   motion for summary judgment, that Plaintiff qualified for the exemption, an affirmative defense

     which Defendant was required to establish.

11   ### 3.  Plaintiff is not an exempt employee in a "construction occupation"

12   In addition to Defendant's failure to produce a CBA which covers Plaintiff's employment

13   as required by Labor Code section 512(e), Plaintiff is not working in a "construction occupation"

14   as a mobile sweeper driver. Labor Code section 512(f) exempts employees covered by a qualifying

15   CBA which is employed in a construction occupation such as "work involving alteration,

16   demolition, building, excavation, renovation, remodeling, maintenance, improvement, and repair

17   and any other similar or related occupation or trade" and other job descriptions at Business and

18   Professions Code section 7025-7035. Cal. Lab. Code § 512(f), (g)(2). Defendant argues that

19   Plaintiff's employment as a mobile sweeper driver would fall under this category. The Industrial

20   Welfare Commission (IWC), the agency who issue wage orders governing different occupation

21   industries issued Wage Order 16 for construction, drilling, logging and mining industries, which

22   similarly includes "occupations of construction, including but not limited to work involving

23   alteration, demolition, building, excavating, renovation, remodeling, maintenance, improvement,

     and repair work." (Suppl. RJN Ex. 5 § 1.)  However, the IWC has also issued Wage Order 1 to cover

24   the manufacturing industry. (Supp. RJN Ex. 4 § 1.) The California Department of Labor Standards

25   Enforcement has issued a booklet to assist in determining what occupation, a specific type of

26   employment falls under. (Suppl. RJN Ex. 6.) Under the wage order, the employees involved in the

27   manufacture of ready-mix cement or concrete are within manufacturing occupations covered by

28   Wage Order 1 and not construction occupations covered by Wage Order 16, such as those

11

**SUPPLEMENTAL BRIEF ISO OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT; 23-cv-00619-JCS**

employees directly involved in mining of materials. (Compare Suppl. RJN Ex. 6 at 12, 36 (including employees involved in manufacturing of ready mix concrete and cement under a manufacturing occupation) with Suppl. RJN Ex. 6 at 30-33 (describing employees directly involved in mining).) As a mobile sweeper, Plaintiff was not involved in mining materials and was not involved, like a ready-mix truck driver, in delivering ready-mix concrete directly to construction sites. As a mobile sweeper, Plaintiff worked exclusively at Defendant's ready mix concrete manufacturing plants cleaning up concrete. (Dkt. 42-1 at 6 ¶ 3.) Thus, he would not be categorized as a "construction occupation" and is instead a worker at a manufacturing plant, alike to a janitor at a manufacturing facility, except that Plaintiff uses the mobile sweeper vehicle. (*Id.*)

Defendant cites *Ferguson v. Randy's Trucking, Inc.,* 2016 U.S. Dist. LEXIS 155112, at *3-4, 13-24 (Cal. E.D. Nov. 7, 2016) for the contention that drivers related to drilling sites were subject to Wage Order 16 covering construction employees and that Plaintiff should similarly be held to be a construction employee. (Dkt. 44 at 5-6.) Contrary to Defendant's contention, the *Ferguson* court found that the plaintiffs, drivers of vacuum tucks, winch trucks, and straight trucks, driving to and between jobsites and performing vacuuming of fluids at the drilling sites were *not* construction occupation employees under Wage Order 16 despite performing duties at the drilling sites and were instead covered by Wage Order 9 governing transportation workers. *Ferguson,* 2016 U.S. Dist. LEXIS 155112, at *3-4, 13-24. *Ferguson* does not assist Defendant and supports that Plaintiff should be found to be a manufacturing employee, not subject to an exemption intended for "construction occupations."

Defendant also cites *Shwiyat, supra,* 2023 U.S. Dist. LEXIS 226843, at *13-14 for support that Plaintiff should be found to be involved in a construction occupation. However, the *Shwiyat* defendant had produced evidence that the quarry employees, which Defendant refers to, were directly involved in the mining of materials. The evidence was that the employees who were found to fall under the construction occupation work in the quarries and perform job functions related to the quarries' operations of excavating materials, i.e., "employees at aggregate quarries 'excavate stone, rocks, and gravel.'" *Id.* at *6-8, 25-26. The *Shwiyat* plaintiff presented no evidence to dispute this evidence. *Id.* In contrast to *Shwiyat,* here, Defendant has presented no evidence that Plaintiff was directly involved in excavation activities and Plaintiff asserts that his work as a mobile sweeper driver was limited to cleaning up at the manufacturing plant, not working as an excavation worker.

12

(Dkt. 42-1 at 6 ¶ 3.)

Defendant also cites *Plagakis v. Outsource Util. Constructor Corp.,* 2023 U.S. Dist. LEXIS 221107, at *1-3, 9-11 (Cal. E.D. Dec. 11, 2023), where the court found that a "yard traffic technician" who was engaged at traffic control at the construction sites was engaged in a construction occupation and fell under Wage Order 16, because it expressly includes such "flag persons" as construction workers and the construction occupation definition in Labor Code section 512(f) included employees involved in "the preparation of removal of roadway construction zones, lane closures, flagging, or traffic diversion." *Plagakis, supra,* 2023 U.S. Dist. LEXIS 221107, at *10-11. In contrast here, Plaintiff did not work at a construction site and the Labor Code section 512 exemption and Wage Order 16 do not have language covering a mobile sweeper driver cleaning exclusively at the concrete manufacturing plants.

Defendant also cites *Lopez v. W. Coast Arborists, Inc.,* 2024 U.S. Dist. LEXIS 17837, at *8-9 (E.D. Cal. Feb. 1, 2024) where there was no dispute that the employees performing tree removal, tree pruning, stump removal, qualified as a construction occupation subject to Labor Code section 512's exemption. *Lopez, supra,* 2024 U.S. Dist. LEXIS 17837, at *8-9. But, unlike here, the *Lopez* plaintiff worked as an employee at a tree and landscape maintenance company, performing landscape work at the "construction" worksite and which Labor Code section 512 expressly includes through incorporation of Business and Professions Code section 7026.1 of employees "who performs tree removal, tree pruning, stump removal, or engages in tree or limb cabling or guying." Defendant cites no job classification at Business and Professions Code section 7025-7035 which would cover Plaintiff's employment as a mobile sweeper driver.

**C.**   **Plaintiff's Claim For Rest Periods Is Not Preempted Because Plaintiff's Work As A Mobile Sweeper Driver Is Covered By Wage Order 1, Not Wage Order 16**

For the first time, Defendant argues in its reply that Plaintiff is exempt from rest periods under Wage Order 16. (Dkt. 44 at 6-7.) Defendant contends that Plaintiff's work as a mobile sweeper driver falls under Wage Order 16 and that Wage Order provides that the rest period requirements of § 11 do not apply if the employee is covered by a CBA and the CBA provides equivalent protection. (*Id.*) For all the reasons set forth in the section B immediately prior to this section and incorporated again here, Plaintiff is subject to Wage Order 1 governing manufacturing occupations, not Wage Order 16. In summary, as a mobile sweeper driver, Plaintiff performed work exclusively at Defendant's

13

**SUPPLEMENTAL BRIEF ISO OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT; 23-cv-00619-JCS**

1  concrete manufacturing plant cleaning up concrete the manufacturing plant following manufacture

2  and where it was loaded onto trucks. The DLSE manual expressly indicates that workers in the ready

3  mix cement and concrete manufacturing operations are manufacturing employees. Defendant

4  presents no evidence that Plaintiff was directly involved in excavation and other types of work which

5  would be covered by Wage Order 16. In addition, as noted above, Defendant has failed to present a

6  CBA which covers his employment as a mobile sweeper driver. The CBA relied on by Defendant is

7  limited to categories of employment identified in the CBA but the CBA does not identify mobile

8  sweeper drivers.

9  **D.      Because Plaintiff's Meal And Rest Break Claims Are Not Exempt, They Are Based On California law And Not Based On The CBA**

10      In its Reply, Defendant argues that Plaintiff's meal and rest break claims are subject to

11  exemption, so they are preempted because they are based in the CBA. (Dkt. 44 at 8-9.) As explained

12  above, Defendant has failed to prove Plaintiff's meal and rest break claims as a mobile sweeper

13  driver are subject to exemption, so they continue to be based on California law and not the CBA.

14  **E.      Plaintiff's Meal Period Claim Does Not Require Interpretation Of The CBA's On-Duty Meal Period Provision**

15      In its Reply, Defendant argues that Plaintiff's meal break claim is preempted because it

16  requires interpretation of CBA's On-Duty Meal Period Agreement. (Dkt. 44 at 12-13.) As explained

17  above, Defendant has failed to submit evidence of a CBA which covers his employment as a mobile

18  sweeper driver. In addition, as noted in the Opposition, the on-duty meal period agreement is

19  expressly limited to "Employee's work as a Ready-Mix Truck Driver." (Dkt. 39-9.) Plaintiff is

20  excluding any claims based on his work as a ready mix truck driver, thus, there is no need to interpret

21  the meal period agreement or the CBA. In addition, Defendant fails to point to why Plaintiff's claim

22  related to meal period for his work as a mobile sweeper driver, the touchstone of the analysis, would

23  require interpretation of the CBA. His claims are based on California law and it is irrelevant that the

24  CBA provides for parallel protections. (*See* Dkt. 42 at 7-8 (citing cases, *Meyer, Lingle, McGhee,*

25  which explain that when a claim is based on a non-waivable statutory right the fact the CBA provides

    for parallel productions does not mean it requires interpretation of the CBA).)

26  **F.      Plaintiff's Meal And Rest Break Claims Are Not Preempted By The FMCSA**

27      Defendant argues that the FMCSA preempts Plaintiff's meal and rest period claims. (Dkt. 44

28  at 14.) In addition to the fact that Defendant conceded at the motion hearing that the FMSCA does

14

SUPPLEMENTAL BRIEF ISO OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT, OR, IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT; 23-cv-00619-JCS

not preempt Plaintiff's rest period claims, the FMSCA does not preempt Plaintiff's meal and rest period claims. As noted in the opposition, Defendant's argument is premised on section 49 U.S.C. § 31141(a) permitting the FMSCA to find state law relating to commercial motor vehicle safety is preempted (49 U.S.C. § 31141(a)) the FMSCA's 2018 order holding the California's meal and rest break claims are preempted "to the extent they apply to drivers of property-carrying CMVs subject to the FMSCA's HOS rules." (Pl.'s RJN Ex. 1, at 39-40.)

But Plaintiff's employment during the relevant time period was as a mobile sweeper driver that did not carry property and, therefore, was not covered by the FMSCA's order. Plaintiff will not proceed on any meal period claims for the limited times he worked as a ready-mix driver. Thus, the FMSCA order does not preempt his meal period or rest period claims.

### G. Because Plaintiff's Claims Are Not Preempted, His Derivative Claims Do Not Fail

Defendant argues that because Plaintiff's minimum wage, meal period, and rest period claims are preempted, his derivative claims also fail. (Dkt. 44 at 14-15.) Defendant's argument fails because as set forth above, Plaintiff's claims are not preempted. So, to the extent his claims in his fourth through seventh causes of action are derivative, they also may continue. In addition, Plaintiff's fifth cause of action alleges violations which are not solely derivative based on Defendant's failure to accurately reflect the total hours worked. (Dkt. 1-1, at 10, 21.)

### H. Because Plaintiff's Claims Are Not Preempted, Plaintiff Does Not Lack Standing To Prosecute Class Claims

Defendant argues that because Plaintiff's claims are subject to dismissal, he lacks standing to bring his claims on behalf of others. (Dkt. 44 at 15.) Defendant's argument fails because Plaintiff's claims are not preempted. So, he continues to have standing to maintain his class claims.

### I. Because Plaintiff's Claims Are Not Preempted, The Court Cannot Order Plaintiff To Submit His Claims To the CBA's Mandatory Grievance Procedure

Finally, Defendant argues that because Plaintiff's claims are preempted, the Court should compel those claims to the mandatory grievance and arbitration procedure pursuant to the CBA. Defendant's argument fails because as set forth above, Plaintiff's claims are not preempted.

## III. CONCLUSION

Based on the foregoing, Plaintiff requests that the Court deny Defendant's motion.

Dated: February 13, 2024

15

Jordan D. Bello
Attorneys for Plaintiff
JUAN MANUEL TEJEDA, on behalf of
himself and others similarly situated

**SUPPLEMENTAL BRIEF ISO OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT; 23-cv-00619-JCS**