UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JUAN MANUEL TEJEDA,

        Plaintiff,

    v.

VULCAN MATERIALS COMPANY, et al.,

        Defendants.

Case No.  23-cv-00619-JCS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 38

## I.    INTRODUCTION

Plaintiff Juan Manuel Tejeda brings this putative class action asserting wage and hour claims under California law against his former employer, CalMat Company.[1]  The case was originally filed in Sonoma County Superior Court and was removed to this Court by Defendant under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  Presently before the Court is Defendants' Motion for Summary Judgment or, in the Alternative, Motion for Partial Summary Judgment ("Motion").  A hearing on the Motion was held on April 19, 2024 and the parties subsequently submitted supplemental briefing.  A second hearing was held on July 31, 2024. For

---

[1] The caption of the complaint lists two defendants:  CalMat Company ("CalMat") and Vulcan Materials Company.  As discussed further below, "Vulcan Materials Company" is both a dba for CalMat and the name of a separate corporate entity.  Declaration of Philip Miller in Support of Defendants' Motion for Summary Judgment or, in the Alternative Motion for Partial Summary Judgment, dkt. no. 38-1 ("Miller Decl."), ¶¶ 1-5. Tejeda named both CalMat and Vulcan Materials Company as defendants because both were listed on his pay statements.  However, Miller explains that the reference to Vulcan Materials Company on Tejeda's pay statements was to the dba and not to the separate corporate entity.  *See id.* & Ex. A (pay statement).  Based on that understanding, Tejeda has stipulated to the dismissal without prejudice of Vulcan Materials Company.  Dkt. no. 51. Therefore, the Court refers to "Defendant" rather than "Defendants" herein.  Except where otherwise stated, references in this order to "Vulcan Materials Company" are to the separate corporate entity.

1  the reasons stated below, the Motion is GRANTED IN PART AND DENIED IN PART.[2]

2  ## II.    BACKGROUND

3  ### A.    Factual Background[3]

4  Vulcan Materials Company ("Vulcan") is the nation's largest producer of construction

5  aggregates, primarily producing crushed stone, sand, and gravel.  Miller Decl. ¶ 3. CalMat is a

6  wholly-owned subsidiary of Legacy Vulcan LLC, which is a wholly owned subsidiary of Vulcan

7  Materials Company.  *Id.*  CalMat does business as Vulcan Materials Company in the State of

8  California. *Id.* ¶ 5; Defendants' Request for Judicial Notice ("RJN"), Exhibit A (CalMat's

9  fictitious business registration record).[4]

10  Tejeda was hired by CalMat on December 13, 2017 and was terminated on May 12, 2022.

11  Miller Decl. ¶ 6; *see also* Declaration of Jordan D. Bello in Support of Plaintiff's Opposition to the

12  Motion for Summary Judgment or Partial Summary Judgment ("Bello Decl."), Ex. 1 (Declaration

13  of Juan Manuel Tejeda) (Certified English Translation) ("Tejeda Decl.") ¶¶ 2, 6.  While employed

14  by CalMat, Tejeda worked as an hourly employee. Tejeda Decl. ¶ 2; Miller Decl. ¶ 6.  Tejeda was

15  initially hired as a ready-mix concrete truck driver based in Petaluma and was transferred to Napa

16  in January 2018, where he continued to work as a ready-mix driver. Tejeda Decl. ¶ 2; Miller Decl.

17  ¶ 6. As a ready-mix driver, Tejeda was required to maintain a Commercial Class A or Class B

18  driver's license and was responsible for operating a heavy-duty vehicle used to transport ready-

19  mix concrete to CalMat customers.  Miller Decl. ¶¶ 7, 9.

20  In November 2020, Tejeda's job was reclassified and his job title became "Driver – Mobile

21

22  ---

[2] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28
23  U.S.C. § 636(c).
[3] The facts set forth herein are those the Court finds to be undisputed unless otherwise stated.
24  [4] Defendants have asked the Court to take judicial notice of the Fictitious Business Registration
Record for CalMat Co., available at https://actonline.saccounty.gov/citizenaccess/sacco-
25  fbnsearch.aspx.  Defendants' RJN, Ex. A.  Plaintiff has not opposed the request.  Because this
document is a public record that is available from a reliable source on the internet, namely, a
26  website run by a government agency, the Court GRANTS Defendants' request for judicial notice
of this document.  *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D.
27  Cal. 2015) (taking judicial notice of business profile on California Secretary of State's website on
the basis that under Rule 201 the court can take judicial notice of '[p]ublic records and
28  government documents available from reliable sources on the Internet,' such as websites run by
governmental agencies.").

United States District Court
Northern District of California

Sweeper."  Tejeda Decl. ¶ 3; Bello Decl. ¶ 5 & Ex. 4 (Job Information Change Form, produced in response to Plaintiff's Request for Production of Documents Set One, number two (Bello Decl., Ex. 3 p. 3)).  Tejeda describes his work as a mobile sweeper truck driver as follows:

> My job as a Mobile Sweeper Driver was to be a driver of a sweeping truck, which is similar to street sweeping trucks used by cities to clean streets. As a Mobile Sweeper Driver, I would use the Mobile Sweeper to clean up dirt, concrete, and trash at different areas of Defendants' concrete plants like the areas where Defendants loaded concrete onto mixer trucks which would accumulate debris. Each day as a Mobile Sweeper Driver, I would start at the Petaluma concrete plant on Hopper Street. I would clean at two or three of Defendants' concrete plants a day which were in the region, but I would generally start and end my day from the Petaluma concrete plant on Hopper Street. The two primary locations I would clean would be the Petaluma concrete plant on Hopper Street and Defendants' San Rafael concrete plant. As a Mobile Sweeper Driver, I did not carry property, materials, or passengers and never crossed state lines. I would simply use the Sweeper Truck to clean areas of Defendants' concrete plants. I generally worked as a Mobile Sweeper Driver five days a week from approximately 5 a.m. to 1 p.m. and at times I would work until 2 p.m. or 3 p.m.

Tejada Decl. ¶ 3.

In support of its Reply brief, Defendant also offered a job description for the mobile sweeper position, which states as follows, under the heading "What You'll Do:"

**Promote Safety and Environmental Procedures**. Take an active role in prioritizing safety and Vulcan's environmental standards for yourself and others at all times while operating equipment in and out of the plant.

**Operate Sweeper Truck and Equipment**. Operate sweeper truck to clean loose materials such as sand, gravel, crushed rock, and/or other materials at sales yards and concrete operations. Properly operate levers on trucks, cleaning brushes, remote vacuum, and sprinkler hoses.

**Inspect Equipment**. Perform thorough pre-trip and post-trip inspections in accordance with Vulcan standards. Complete daily mobile equipment reports and other relevant documentation with accuracy. Must be able to handle and understand Department of Transportation regulations, keeping all documentation up to date.

**Maintain Equipment**. Maintain truck and equipment performance through routine maintenance, checking vehicle fluid levels. Routinely clean and service equipment used for cleaning. Perform physical activities, such as cleaning interior of collection hopper, filtering system and exterior of unit daily as per manufactures recommendation and Vulcan standards. Report unsafe mechanical conditions to supervisor.

**Additional Responsibilities**. Other duties, yard maintenance and housekeeping as assigned.

1    Declaration of Jennifer Baker in Support of Defendants' Motion for Summary Judgment or, in the

2    Alternative Motion for Partial Summary Judgment ("Baker Decl."), Ex. 1. The job description

3    further states that a sweeper truck operator "[m]ust possess a commercial driver's license and have

4    a valid DOT physical or the ability to get one." *Id.*

5        Tejeda accepted the job as a ready-mix truck driver at CalMat in Petaluma, then in Napa,

6    with the understanding that these were union positions. Miller Decl., Ex. C (Dec. 13, 2017 offer

7    letter for position of ready-mix driver at Petaluma location stating that the job was a union job

8    subject to the collective bargaining agreement with Teamsters Union Local 665; Jan. 30, 2018

9    offer letter for ready-mix driver at Napa location stating that the job was a union job subject to the

10   collective bargaining agreement with Teamsters Union Local 315; June 16, 2020 offer letter for

11   ready-mix driver at Petaluma location stating that the job was a union job subject to the collective

12   bargaining agreement with Teamsters Union Local 665).  Plaintiff also signed a form dated June

13   19, 2020 certifying that he was a member of the Local 665 and had previously been a member of

14   the Teamsters Union Local 315.  Miller Decl., Ex. G.

15       Defendant has supplied the collective bargaining agreement ("CBA") with Teamsters

16   Local 665, which it contends is the applicable CBA for the time period covered by Tejeda's

17   claims.  Miller Decl., Ex. H ("Local 665 CBA").  As discussed below, the parties disagree as to

18   whether the Local 665 CBA applies to Tejeda's work as a mobile sweeper driver.  It is undisputed

19   that the Local 665 CBA applies to his work as a ready-mix driver.

20        Section 3 of the Local 665 CBA set forth regular hourly wages, providing for regular

21   wages starting at $30 per hour, and Section 2.7 listed overtime rates.  *Id.*, Sections 2.7, 3.  The

22   Local 665 CBA provided that the start/quit times were "in one-quarter (1/4) hour increments." *Id.*,

23   Section 2.2.  The Local 665 CBA established rules governing provision of lunch periods, but those

24   requirements could be waived by employees who "[met] and agree[d] to the eligibility

25   requirements for an 'On Duty Meal Period Agreement.'" *Id.*, Section 2.4.  Section 20.1 of the

26   Local 665 CBA established a grievance procedure, which included the creation of a Board of

27   Adjustment to address any disputes relating to the "meaning or enforcement" of the CBA.  *Id.,*

28   Section 20.1.  Under the CBA, the decision of the Board of Adjustment was "final and binding on

United States District Court
Northern District of California

1   both parties." *Id.*

2      According to Defendant, "CalMat configures its timekeeping system, Kronos, to round

3   start and end times pursuant to the 'rounding rule,' established in . . . the Local 665 CBA."  Miller

4   Decl. ¶ 14.

5      Tejeda signed an On Duty Meal Period Agreement on January 30, 2018.  *Id.*, Ex. I ("Meal

6   Period Agreement").  The Meal Period Agreement states that it remains in effect "indefinitely" but

7   that the employee may revoke the agreement at any time with written notice to the employer.  *Id.*

8   According to Defendant, there is no evidence he ever revoked that agreement.  Miller Decl. ¶ 15.

9   Under the Meal Period Agreement, "Calmat Co. . . .  and . . .Tejeda . . .  agreed that the nature of

10  [Tejeda's] work as a Ready-Mix Truck Driver, including but not limited to customer requirements,

11  may prevent [Tejeda] from taking required, duty-free unpaid meal period(s) of at least 30

12  continuous minutes (Off-Duty Meal Period)" and that "only on such workdays" Tejeda would be

13  "entitled to one 'on-duty' meal period[.]"  *Id.*, Ex. I.

14  **B.    Procedural Background**

15  **1.  The Complaint**

16     In the Complaint, Tejeda alleges that he was an hourly non-exempt employee of CalMat

17  and Vulcan from January 30, 2022 to May 12, 2022.  Compl. ¶ 4.  He alleges that as a CalMat

18  employee, he was subject to the following illegal pay practices:

19  •   **Failure to pay wages for all hours worked at the legal minimum wage**: Tejeda alleges

20       he worked more minutes per shift than Defendant credited him with having worked,

21       including by "rounding" down or "shaving" his total daily hours at the time of their clock-

22       in and clock-out to the nearest quarter of an hour, including at the time of their clock-in

23       and clock-out for meal periods, "from February 12, 2022, to the present[,]" in violation of

24       California Labor Code sections 1194 and 1197 and Industrial Welfare Commission

25       ("IWC") Wage Order 1.  *Id.* ¶¶ 14-17, 39-46.

26  •   **Failure to authorize or permit all legally required and compliant meal periods and/or**

27       **failure to pay meal period premium wages**:  Tejeda alleges that Defendant failed to

28       provide off-duty meal periods required under California Labor Code section 512 and IWC

1   Wage Order 1, §11.  He further alleges that from February 12, 2022, Defendant failed to

2   pay the required premium equal to an hour of pay at the employee's regular rate of pay for

3   each workday that a legally required and compliant meal period was not provided under

4   California Labor Code §226.7 and IWC Wage Order 1, §11.  *Id.*  ¶¶ 19-23, 47-54.

5   • **Failure to authorize and permit all legally required and compliant rest periods and/or**

6   **failure to pay rest period premiums**: Tejeda alleges that from "February 12, 2022, to the

7   present," Defendant failed to provide him with an uninterrupted duty-free ten-minute rest

8   break for every four hours worked or major fraction thereof, as required under California

9   Labor Code section 226.7 and IWC Wage Order 1, §12.  He further alleges that Defendant

10  failed to pay him a rest period premium wage of one additional hour of pay at his regular

11  rate of compensation for each workday he did not receive all legally required and

12  compliant rest periods.  *Id.* ¶¶ 24-28, 55-62.

13  • **Failure to timely pay earned wages during employment:**  Tejeda alleges, as a derivative

14  claim of the above violations, that Defendant failed to timely pay his earned wages

15  (including minimum wages, meal period premium wages, and/or rest period premium

16  wages), in violation of California Labor Code section 204.  *Id.* ¶¶ 29-31, 63-69.

17  • **Failure to provide accurate wage statements:**  Tejeda alleges, as a derivative claim, that

18  from February 12, 2022, to the present Defendant failed to provide accurate wage and hour

19  statements to him in violation of Labor Code section 226.  *Id.* ¶¶ 32-34, 70-80.

20  • **Failure to timely pay final wages:**  Tejeda alleges, as a derivative claim, that he was not

21  paid his final wages in a timely manner as required by Labor Code section 203.  *Id.*  ¶¶ 35-

22  36, 81-90.

23  Tejeda asserts these claims on his own behalf and on behalf of similarly situated CalMat

24  employees, seeking to represent the following classes: 1) a minimum wage class; 2) a meal period

25  class; 3)  a rest period class; 4) a pay day class; 5) a wage statement class; 6) a waiting time class;

26  and 7) a California class.  *Id.*  ¶ 37.  Tejeda asserts all of his claims based on conduct "from

27  February 12, 2022."  Compl. ¶¶ 43(a), 50, 58(a), 73-74, 87-89.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

### 2.   Contentions of the Parties

#### a.   The Motion

Defendant asks the Court to dismiss all of Tejeda's claims under principles of federal preemption.  Motion at 1-2.  First, Defendant asserts that under the two-step analysis established in *Burnside v. Kiewit Pac. Corp*. 491 F.3d 1053 (9th Cir. 2007) for determining whether a claim is preempted under Section 301 of the LMRA, Tejeda's minimum wage and meal period claims (Claims One and Two) are preempted.  Motion at 9-16.  Under *Burnside*, courts first consider whether the claim is based on a right that "exists solely as a result of the CBA," in which case the claim is preempted, and the analysis ends there.  491 F.3d at 1059.  If the right exists independent of the CBA, courts go on to step two to consider whether the right is "substantially dependent on analysis of a collective-bargaining agreement." *Id.*

As to the meal period claim, Defendant argues that because Tejeda was a ready-mix driver and thus exempt from meal period requirements under California Labor Code section 512, any entitlement he might have had to meal periods came solely from the CBA; therefore, Defendant asserts, this claim is preempted by Section 301 of the LMRA at step one of the *Burnside* test. Motion at 10-11.

In addition, Defendant contends, both the minimum wage and the meal period claim are preempted at step two of the *Burnside* analysis because these claims are substantially dependent on the terms of the CBA.  *Id.* at 11-16.  According to Defendant, "determination as to whether state law rights are substantially dependent on an analysis of the CBA turns on whether the claim cannot be resolved by simply looking to versus interpreting the CBA.'" *Id*. at 11 (quoting *Curtis v. Irwin Indus., Inc*., 913 F.3d 1146, 1153 (9th Cir. 2019)).  Defendant argues that even non-negotiable rights established under state law can be preempted at step two where there is a dispute over the meaning of contract terms.  *Id.* at 11 (citing *Cornn v. United Parcel Serv., Inc*., 2004 WL 2271585, at *1 (N.D. Cal. Oct. 5, 2004)).

Defendant asserts that the minimum wage claim is preempted at step two because it is based on the use of quarter-hour rounding, which is authorized under the Local 665 CBA.  *Id*. at 12-14.  According to Defendant, "under current California law, an employer is allowed to adopt a

rounding policy so long as it is 'fair and neutral on its face and "it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." ' " *Id.* (quoting *See's Candy Shops, Inc. v. Superior Court*, 210 Cal. App. 4th 889, 907 (2012) (quoting 29 C.F.R. § 785.48)).  Defendant acknowledges that the court in *Camp v. Home Depot U.S.A., Inc*., 84 Cal.App.5th 638, 648-661 (2022) reached a different conclusion, but asserts that *See's Candy* states the prevailing standard because the Supreme Court has granted review of the *Camp* decision and that review is still pending.  *Id.* at 12 n. 9.

To determine whether the rounding provision is "fair and neutral," Defendant contends, the Court must conduct "an inquiry into the parties' intent when drafting the CBA and the customary meaning" of the terms in the rounding provision, including "start" and "quit." *Id.* at 13. Such an inquiry triggers preemption under the LMRA, Defendant contends.  *Id.*

Likewise, Defendant asserts, the meal period claim requires interpretation of the CBA because "the undisputed record shows that Plaintiff signed an 'On-Duty Meal Period Agreement' . . . pursuant to the Local 665 CBA."  *Id.* at 14 (citing Miller Decl. ¶ 15 & Exhibit I).  According to Defendant, "the CBA provides for legally-compliant half hour meal periods with the caveat that the company 'will allow the current practice of on duty meal agreements,' provided employees 'meet and agree to the eligibility requirements.'" *Id.*  at 15 (citing Miller Decl. ¶ 13 & Ex. H, at Section 2.4).  Thus, Defendant contends, "[t]he applicability of that provision to [Tejeda], including whether he meets the eligibility requirements under the CBA[,] is a matter of interpretation" that gives rise to preemption under step two of the *Burnside* test.

Defendant further contends that because both the minimum wage and the meal period claims are preempted, Tejeda's only recourse was to bring a Section 301 claim after exhausting the mandatory grievance procedure in the CBA but that these claims are now time-barred and therefore, Tejeda's minimum wage and meal period claims must be dismissed.  *Id.* at 16-17.

Next, Defendant contends Tejeda's meal and rest break claims (Claims Two and Three) are preempted by the Federal Motor Carrier Safety Administration's Hours of Service ("HOS") regulations, which establish meal and rest break requirements for property-carrying commercial

United States District Court
Northern District of California

drivers.  *Id.* at 18-20.   According to Defendant, the "HOS regulations apply to all 'drivers' (49 C.F.R. § 395.1(a)(1)). A 'driver' is "any person who operates any commercial motor vehicle.' 49 C.F.R. § 390.5. A 'commercial motor vehicle' is a motor vehicle 'used on a highway in interstate commerce to transport passengers or property when the vehicle . . . [h]as a gross vehicle weight . . . of 5,536 kg (10,001 pounds) or more . . . .' " *Id.* at 18.  Thus, Defendant contends, "the federal HOS regulations apply to persons who are: (1) drivers of vehicles weighing 10,001 or more pounds; (2) in interstate commerce."  *Id.* (citing *Sweet v. United Parcel Serv., Inc.*, 2010 WL 11507624, at *4 (C.D. Cal. 2010)).

Defendant further asserts that because Tejeda was a ready-mix driver, these federal regulations applied to him and preempt the California state laws on which he relies for his meal and rest break claims.  *Id.* at 18-20.  In particular, Defendant asserts that Tejeda met the definition of "driver" under the regulations because it is undisputed that the cement truck Tejeda drove weighed more than 10,001 pounds and that the raw materials for the cement that was carried in the truck came from outside of California.  *Id.* at 18-19 (citing 49 C.F.R. § 395.1(a)(1); 49 C.F.R. § 390.5).  Defendant also asserts that the regulations expressly cover Tejeda's job as a ready-mix driver, stating that a "driver of a ready-mixed concrete delivery vehicle subject to the requirement for a 30-minute rest break in § 395.3(a)(3)(ii) may use 30-minutes or more of time spent while waiting with the commercial motor vehicle at a job site or terminal to meet the requirement for the 30-minute rest break, providing the driver performs no other work during the break."  *Id.* at 19 (citing 49 C.F.R. § 395.1(t)).

Defendant argues further that all of Tejeda's remaining claims are derivative of his first three claims and therefore fail for the same reasons.  *Id.* at 20.  Moreover, it contends, under Article III of the U.S. Constitution, Tejeda lacks standing to assert these claims on behalf of the putative classes because his own claims are subject to dismissal.  *Id.* at 20-21.

Defendant requests dismissal of Tejeda's claims, or, if the Court finds that Tejeda's claims under Section 301 are not time-barred, that the Court order Tejeda to undergo the mandatory grievance procedure established under the CBA.  *Id.* at 22-23.  It also asks the Court to hold that Tejeda lacks standing to assert his claims on behalf of the putative classes.  *Id.*

b.   Opposition

In his Opposition, Tejeda implicitly concedes that some of his claims are partially preempted and therefore limits his meal and rest break claims (but not his minimum wage claim) to his work as a mobile sweeper driver.  Otherwise, Tejeda rejects Defendant's preemption arguments.

As to the minimum wage claim (Claim One), Tejeda rejects Defendant's assertion that it requires interpretation of the CBA's quarter-hour rounding provision and therefore is preempted under Section 301 of the LMRA.  *Id.* at 1, 6-10. Tejeda contends his entitlement to be paid for all time worked is a non-negotiable right under California law which "cannot be bargained away by a union agreement."  *Id.* at 1.  Further, Tejeda contends, Defendant was "not permitted to use rounding under California law and [was] required to compensate employees for all hours worked," citing *Camp v. Home Depot U.S.A., Inc*., 84 Cal.App.5th 638, 648-661 (2022), pet. for rev. granted, in which the court, "following guidance from the California Supreme Court's decisions in *Donohue v. AMN Servs., LLC*, 11 Cal. 5th 58, 71-74 (2021) . . . and *Troester v. Starbucks Corp*., 5 Cal. 5th 829, 841-848 (2018) . . . held that if an employer can capture and has captured the exact amount of time an employee has worked during a shift, the employer must pay the employee for 'all the time' worked and cannot use rounding."  *Id.* at 7.

Tejeda rejects Defendant's reliance on *See's Candy* to show rounding is permissible under California law, as well as Defendant's suggestion that *See's Candy* states the "prevailing standard because review was granted [in *Camp*][,]" noting that the California "Supreme Court's grant of review  . . . did not order the case not citable" and instead stated that the court of appeal's decision in *Camp* "may be cited [not only] for its persuasive value but also to establish the existence of a conflict in authority."  *Id.* (citing *Camp v. Home Depot U.S.A., Inc*., 304 Cal. Rptr. 3d 82 (Feb. 1, 2023)).

Tejeda asserts that applying the *Camp* standard, he will prove his minimum wage claim "by showing that his actual punch times were not compensated with wages for all of the recorded hours."  *Id.*  Furthermore, Tejeda asserts, "[t]o the extent the court might need to determine the rounding parameters in place, these parameters would be derived from the settings in Defendant's

1     timekeeping system, not the CBA" and "even if rounding were permitted, the inquiry will be

2     focused on whether the rounding parameters programmed into the system comply with California

3     law, not whether they comply with the CBA." *Id.*

4          With respect to his meal period claim (Claim Two), Tejeda implicitly concedes that this

5     claim is preempted to the extent it is based on his work as a ready-mix concrete truck driver and

6     stipulates to dismissal of this claim to the extent it is based on such work.  Opposition at 2.  He

7     contends, however, that the meal period claim is not preempted to the extent it is based on his

8     work as a mobile sweeper driver – the job he held from November 2020 until he was terminated.

9     *Id.* at 1-2.  In support of this argument, Tejeda supplies evidence that was produced by Defendant

10    in discovery showing that as of November 2020, his job was reclassified to mobile sweeper driver

11    and that from that time until his termination, in May 2022, he worked five days a week in that

12    position while continuing to work one or two Saturday's a month as a ready-mix concrete truck

13    driver.  Bello Decl., Ex. 1 (Tejeda Decl. (English)) ¶¶ 2-3; *id.*, Ex. 4 (Job Information Change

14    Form). Tejeda argues that Defendant failed to address his work as a mobile sweeper driver or to

15    establish that his meal period claim is preempted as to that work.  Opposition at 2, 10-12.

16         Tejeda further asserts that Defendant has failed to establish that his work in the mobile

17    sweeper driver position falls within Section 512's exemption or that the claim requires

18    interpretation of the CBA.  *Id.* He rejects Defendant's assertion that his meal period claim requires

19    interpretation of the CBA because Tejeda signed an On Duty Meal Period Agreement pursuant to

20    the CBA, pointing out that that agreement related only to his work as a ready-mix concrete truck

21    driver.  *Id.* at 2, 11.  In any event, he contends, his claim is asserted under California law and does

22    not rely on the meal period provision in the CBA.  *Id.* at 11-12.  Because his minimum wage and

23    meal period claims are not preempted, Tejeda asserts, he was not required to exhaust the grievance

24    procedure in the CBA.  *Id.* at 12-13.

25         Tejeda also rejects Defendant's argument that his meal and rest break claims (Claims Two

26    and Three) are preempted under the HOS regulations, observing that Defendant's preemption

27    argument is based entirely on his work as a ready-mix concrete truck driver.  *Id.* at 13.  According

28    to Tejeda, because Defendant failed to address his work as a mobile sweeper truck driver, and in

light of his stipulation that he will limit these claims to his work as a mobile sweeper truck driver, Defendant's preemption argument under the HOS regulations should be rejected. *Id.*

Because Defendant's preemption arguments fail as to his first three claims, Tejeda asserts, they also fail as to the derivative claims. *Id.* at 13-14. Likewise, he contends, the Court should reject Defendant's argument that he lacks standing to pursue these claims on behalf of the putative classes and that he should be compelled to arbitrate under the grievance procedure in the CBA. *Id.* at 14.

### c. Reply

In its Reply, Defendant argues that Tejeda's "belated attempt to alter his liability theory by abandoning a portion of the putative class and carving up his own employment is procedurally improper." Reply at 3. According to Defendant, because Tejeda's complaint was boilerplate and did not contain any allegations describing the specific nature of his work or limiting his claims to his work as a mobile sweeper truck driver, he "cannot be allowed to oppose summary judgment successfully by altering the scope of the case he pled in the operative complaint." *Id.* Tejeda's narrowing of his claims, Defendant contends, amounts to making his complaint a "moving target." *Id.* According to Defendant, because Tejeda may not narrow his claims – and because he concedes that he continued to work as a ready-mix concrete truck driver one or two Saturdays a month even after his job was reclassified – his claims fail as to his work as a ready-mix concrete truck driver because they are preempted. *Id.* Defendant argues further that Tejeda's claims are also preempted to the extent they are based on his work as a mobile sweeper truck driver. *Id.*

As to the meal and rest break claims (Claims Two and Three), Defendant contends Tejeda's work as both a ready-mix concrete truck driver and mobile sweeper truck driver is exempt from California's meal and rest break requirements. *Id.* at 4-9. With respect to the mobile sweeper truck driver position, Defendant rejects Tejeda's contention that he should prevail because Defendant "only analyzed this requirement based on Plaintiff's work as a ready-mix driver, and not his work as a mobile sweeper[,]" characterizing Tejeda's argument as "a 'gotcha' argument." *Id.* at 4.

Defendant argues that Tejeda's work as a mobile sweeper truck driver is exempt from meal

period requirements under Labor Code Section 512(e) because that position, like the ready-mix concrete truck driver position, falls into the category of "commercial driver" under Section 512(f)(2). *Id.* at 4-5. According to Defendant, "[o]ther courts have held that simply identifying a plaintiff as a 'truck driver' in a Complaint fits the definition of a commercial driver, under section 512(e)." *Id.* at 5 (citing *Stone v. Sysco Corp.*, 2016 WL 6582598, at *6 (E.D. Cal. Nov. 7, 2016)).

Defendant further contends Tejeda's meal period claim is preempted under the LMRA as to his work as a mobile sweeper truck driver because that work qualifies as a "construction occupation" under Section 512(e) and (f)(1) and under IWC Wage Order 16. *Id.* (citing *Ferguson v. Randy's Trucking, Inc.*, 2016 WL 6611131 (E.D. Cal. Nov. 8, 2016)). According to Defendant, in *Ferguson*, "the court held, based on a 2011 opinion letter from the Department of Labor Standards Enforcement ("DLSE"), that drivers are also subject to Wage Order 16, applicable to construction workers, if they operate in conjunction with 'a construction, oil drilling, mining or logging site.'" *Id.* at 5-6. Defendant also points to *Shwiyat v. Martin Marietta Materials, Inc.*, in which the court purportedly "held that a separate subset of the class in the case – on-site workers at the company's aggregate quarries were construction workers, under Labor Code § 512 and Wage Order 16." *Id.* (quoting 2023 WL 8811809, at *10 (N.D. Cal. Dec. 20, 2023)).

According to Defendant, "the undisputed facts establish that Plaintiff's time as a mobile sweeper qualifies him as a construction worker because he performed maintenance duties for a construction company, including at a mining or excavation site as the plaintiffs in *Shwiyat* and *Ferguson*." *Id.* at 6. In particular, it points to statements cited in Tejeda's Opposition that his "duties included[ ] 'clean[ing] up dirt, concrete, and trash at different areas of [Defendant's] concrete manufacturing plants in the North Bay in California[ ]'" and that "CalMat manufactures construction materials." *Id.* (quoting Opposition at 2-3).

Defendant also offers evidence in support of its Reply addressing the duties of the mobile sweeper truck driver, namely, a declaration from a Vulcan human resources manager, Jennifer Baker, and a copy of the mobile sweeper driver job description that Baker states is a corporate record. Baker Decl. ¶ 3 & Ex. 1 (job description). The job description states under the heading "Skills You'll Need[,]" "**Ready to Drive.** Must possess a commercial driver's license and have a

valid DOT physical or the ability to get one." Baker Decl., Ex. 1.

As to rest breaks, Defendant asserts that "[a]s a mobile sweeper, a position identified by plaintiff for the first time in his Opposition, Plaintiff is also subject to Wage Order 16, which provides a separate exemption from rest break claims if a CBA provides equivalent protections[,]" as is the case here. Reply at 6. In a footnote, Defendant notes that Tejeda cited to Manufacturing Industry Wage Order 1, but contends "Wage Order 16 has an explicit provision that it 'supersedes any industry or occupational order for those employees employed in occupations covered by this Order[ ]' [and therefore,] even if the Manufacturing Wage Order applies to the class, mobile sweepers and other CalMat employees in construction occupations would be covered by Wage Order 16." *Id.* at 7 n.3. According to Defendant, because Labor Code section 226.7(e) provides that it is inapplicable to employees who are exempt from meal or rest period requirements pursuant to, *inter alia*, IWC Wage Orders, Section 226.7 does not apply to Tejeda's work as a mobile sweeper truck driver. *Id.* at 6-7.

Next, Defendant argues that under the two-step approach established in *Burnside*, Tejeda's minimum wage, meal period and rest break claims are preempted under the LMRA. *Id.* at 7-13. As to the meal period and rest break claims, Defendant contends these claims are preempted at the first step of the *Burnside* analysis because these claims are subject to exemptions under the relevant statutes and IWC Wage Orders for the reasons discussed above. *Id.* at 8-9.

Defendant further contends Tejeda's minimum wage and meal period claims are preempted under the second step of the *Burnside* analysis, which gives rise to preemption even if the right exists independent of the CBA, if the right is "substantially dependent on analysis of a collective-bargaining agreement." *Id.* at 9-13. As to Tejeda's minimum wage claim, Defendant rejects his argument that there is no preemption because California's minimum wage law establishes a non-waivable right, asserting that this argument misses the mark because Defendant "never argued that the Local 665 CBA provides a mechanism for waiving state law. Nor [has Defendant] argued, as Plaintiff contends . . . that the Court should look to the CBA instead of state law." *Id.* at 10. Defendant contends, "[w]hat compels an analysis of the CBA in this case is not the non-negotiable state law right to be paid a minimum wage, but Plaintiff's underlying theory

14

1   that, because his time was rounded, he was not compensated for all time worked." *Id.* According

2   to Defendant, *Cornn v. United Parcel Serv., Inc*., 2004 WL 2271585, at *1 (N.D. Cal. Oct. 5,

3   2004), which it also cited in the Motion, is "particularly salient" on this point, but Tejeda failed to

4   address it in his Opposition. *Id.*

5          Defendant also rejects Tejeda's assertion that his minimum wage claim can be proved

6   without reference to the CBA by simply looking at his recorded start and end times, arguing that

7   Tejeda's position is based on the assumption that under *Camp*, California law does not permit

8   rounding. *Id.* at 10-11. Even apart from the fact that the California Supreme Court has granted a

9   petition for review of the *Camp* case, Defendant asserts that Tejeda mischaracterizes the holding

10  in that case. *Id.* Defendant contends, "*Camp* explicitly does not stand for the blanket proposition

11  that when an employer has 'the actual ability to capture an employee's minutes worked is required

12  to do so.'" *Id.* (quoting 84 Cal. App. 5th at 644-45). Instead, Defendant asserts, "the *Camp* court

13  confirmed that 'there are rounding systems that do not run afoul of California's wage and hour

14  laws.'" *Id.* (quoting 84 Cal. App. 5th at 644-45). Furthermore, Defendant asserts, "in *Camp*[,] the

15  court did not analyze whether a CBA with a rounding provision might alter the analysis regarding

16  'hours worked.'" *Id.*

17         Defendant also argues that "in the context of LMRA preemption, the only cases that

18  analyze rounding are distinguishable[,]" with the "key distinction in LMRA cases based on claims

19  of rounding" being that in those cases the court found "no rounding provision in the CBA to

20  interpret and, therefore, no preemption." *Id.* at 11 (citing *Avila v. Kiewit Corp*., 2021 WL

21  4732575, at *3 (C.D. Cal. June 17, 2021); *Pyara v. Sysco Corp*., 2016 WL 3916339, at *5 (E.D.

22  Cal. July 20, 2016); *Mejia v. DHL Express (USA), Inc*., 2016 WL 9450680, at *3 (C.D. Cal. Feb.

23  25, 2016)).

24         As to the meal period claim, Defendant reiterates its arguments in the Motion that this

25  claim requires interpretation of the meal period provision in the CBA. *Id.* at 12-13. Defendant

26  rejects Tejeda's argument that the On Duty Meal Period Agreement he signed is limited to his

27  work as a ready-mix concrete truck driver, asserting that "[t]his argument is . . . specious as it fails

28  to address how referencing Plaintiff's work as a ready-mix driver necessarily excludes work

15

performing other tasks such as driving a mobile sweeper." *Id.* at 13.  Defendant further contends, "the applicability of Plaintiff's On Duty Meal Period Agreement, with respect to any work performed as a mobile sweeper is, itself, subject to interpretation of the CBA, including an inquiry into the parties' intent when drafting the CBA and the customary meaning of terms in labor agreements, all of which would necessarily trigger LMRA preemption." *Id.*

Defendant reiterates its argument that because Tejeda's claims are preempted by the LMRA, he was required to use the grievance procedure under the CBA, which he did not do, and therefore, his claims are barred.  *Id.*  at 14.

Defendant again argues that Tejeda's meal and rest break claims are preempted under the HOS regulations because he continued to work as a ready-mix concrete truck driver even after his job was reclassified.  *Id.* at 14.  To the extent Tejeda seeks to limit his claims to exclude work as a ready-mix concrete truck driver, Defendant argues that this request is procedurally improper, as discussed above.  *Id.*

Finally, Defendant reiterates its arguments that all of the derivative claims fail for the same reasons the minimum wage, meal period and rest break claims fail; that Tejeda does not have standing to pursue any claims on behalf of the putative classes, and that if the Court does not dismiss Tejeda's claims, it should refer the parties to mandatory arbitration under the CBA's grievance procedure.  *Id.*  at 14-15.

            d.   Objection to Reply Evidence

Tejeda filed an objection to the evidence offered in connection with Defendant's Reply relating to the mobile sweeper driver job duties.  *See* dkt. no. 45 ("Objection").  Tejeda contends that on summary judgment, a party is required to carry its initial burden of production when the motion is filed.  *Id.* at 1 (citing *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-1103 (9th Cir. 2000)).  He asserts that to the extent that Defendant limited its arguments in the Motion to his employment as a ready-mix concrete driver and produced no evidence or argument addressing his employment as a "mobile sweeper driver" – a position Tejeda worked for the last year-and-a-half of his employment – it is improper to make these arguments for the first time in its Reply brief or to offer new evidence to support those arguments.  *Id.* (citing

1    *Townsend v. Monster Bev. Corp.*, 303 F.Supp.3d 1010, 1027-1028 (Cal. C.D. Mar. 20, 2018)

2    (striking new evidence presented with the reply); *Burnham v. City of Rohnert Park*, No. C 92-

3    1439 SC, 1992 U.S. Dist. LEXIS 8540, at * 1, n. 2 (N.D. Cal. May 18, 1992); *Khan v. Seton*, No.

4    LACV 21-03020-VAP-MAAx, 2022 U.S. Dist. LEXIS 40139, at *7 (C.D. Cal. March 4, 2022)).

5    He contends the Court should not consider this evidence. *Id.* at 1-2.

6                    e.   The Hearing and Post-Hearing Briefs

7            At the motion hearing, the Court questioned the parties about a number of gaps and/or

8    discrepancies in their briefs.  First, the Court asked Tejeda's counsel to address Defendant's

9    assertion in the Motion that Vulcan Materials Company was erroneously sued.  *See* Motion at 1 n.

10   1; Miller Decl. ¶¶ 2-5. Tejeda failed to address this contention in his Opposition brief and at the

11   hearing, his counsel stated that he had overlooked this issue.  Therefore, the Court ordered the

12   parties to meet and confer to determine whether Vulcan Materials Company could be dismissed by

13   stipulation; the parties subsequently submitted a stipulation dismissing that defendant, which the

14   Court granted.  Dkt. no. 51.

15           Second, the Court noted that the offer letters in the record refer to two different collective

16   bargaining agreements (the Local 315 CBA and the Local 665 CBA) and that neither lists the

17   mobile sweeper driver position as a covered position.  The Court asked the parties to point to

18   evidence in the record showing that the Local 665 CBA covered Tejeda's work as a mobile

19   sweeper driver.  Defendant responded that for the period covered by the Complaint, which began

20   on February 12, 2022, the relevant offer letter was the June 16, 2020 offer letter for the ready-mix

21   driver position in Petaluma, which specified that the Local 665 CBA applied.  *See* Miller Decl.,

22   Ex. C.  Defendant further asserted that even though the Local 665 CBA does not mention the

23   position of mobile sweeper driver, Tejeda was covered by that CBA because it is undisputed that

24   he continued to work as a ready-mix driver on occasion during the relevant period.

25           Tejeda's counsel disagreed as to the relevant time period covered by Complaint and was

26   unaware that in the Complaint, Tejeda's claims were limited to conduct that occurred after

27   February 12, 2022.  Defendant's counsel explained that this was likely based on the fact that

28   similar claims up to that date were the subject of a separate class action settlement.  The Court

United States District Court
Northern District of California

17

instructed the parties that the starting date for Tejeda's claims should be addressed in supplemental briefing.

At the hearing, the Court asked Tejeda's counsel, "Do you agree that -- so you would be willing to stipulate to that, that the mobile sweep driver is covered by 665?" Transcript at Proceedings, April 19, 20224 ("Transcript") at 11-12. Tejeda's counsel responded, "Yes, your honor." *Id.* at 12. However, when the Court asked *why* the Local 665 CBA covered Tejeda's work as a mobile sweeper driver, noting that there appeared to be nothing in the record that established that that position was covered by that CBA, counsel was not able to offer an explanation for the stipulation. Defendant's counsel, in turn, stated that the applicable collective bargaining agreements were location specific (with the Local 665 CBA covering work at Defendant's Petaluma location) but could not explain why Tejeda's work as a mobile sweeper driver was covered given that that position was not listed in Local 665 CBA. The Court told the parties that it needed a justification for the stipulation that the Local 665 CBA covered Tejeda's work as a mobile sweeper driver and instructed the parties to supply supplemental briefing addressing that question. *Id.* at 12-14.

The Court also asked the parties to address whether Tejeda's work as a mobile sweeper truck driver made him a commercial driver for the purposes of the exemption from meal period requirements under California Labor Code section 512. Because this issue came up only in Defendant's Reply brief, the Court asked the parties to address this question in their supplemental briefing. Defendant stipulated at the hearing, however, that the mobile sweeper driver position fell outside of the HOS regulations and therefore, that FMSCA preemption does not apply to that work. Therefore, the Court did not ask for supplemental briefing on that question.

Finally, the Court asked the parties to address in supplemental briefing Defendant's argument, raised for the first time in its Reply, that Tejeda's work as a mobile sweeper driver was exempt from meal period requirements because it is a "construction occupation" under California Labor Code section 516 and Wage Order 16.

Following the hearing, Tejeda submitted a supplemental opposition brief ("Supp. Opp."), along with a supplemental declaration of counsel ("Supp. Bello Decl.") and a supplemental

request for judicial notice ("Supp. RJN"), addressing arguments made by Defendant in its Reply brief and the Court's questions. Dkt. nos. 52, 52-1, 52-2.  In his supplemental brief, Tejeda stipulates that his claims are limited to the time period alleged in the complaint (February 12, 2022 to the present), citing a judgment entered by the San Diego County Superior Court that released overlapping claims through February 11, 2022. Supp. Opp. at 1; Suppl. RJN, Ex. 1 at 1, 3-4. Tejeda also asserts that the evidence in the record does not establish that his work as a mobile sweeper truck driver was covered by the Local 665 CBA, though he does not dispute that he understood that he was affiliated with the Local 665 during the relevant time period and that the Local 665 CBA covered his work as a ready-mix driver.  Supp. Opp. at 2-3.

Responding to arguments made in Defendant's Reply brief, Tejeda argues that his rounding claim does not require interpretation of the Local 665 CBA (even assuming it covers Tejeda's work as a mobile sweeper driver).  *Id.*  at 3-8.  He further asserts that his work as a mobile sweeper driver did not make him a commercial truck driver or a construction worker, and therefore, the exemption from meal break requirements under California Labor Code section 512(e) does not apply (again, even assuming the Local 665 CBA applies). *Id.* at 8-13.  Tejeda notes that exemptions are to be narrowly construed under California law and argues that the evidence Defendant supplies to show Tejeda was a commercial driver and/or a construction worker is insufficient.  *Id.*

As to the former, Tejeda rejects Defendant's reliance on the mobile sweeper job description, arguing that "the exemption is based on whether California law requires the type of commercial license defined by the Vehicle Code, not an employer's policies."  *Id.*  at 9. According to Tejeda, California law sets commercial licensing requirements based on, *inter alia*, the weight of the vehicle being driven but Defendant has offered no evidence on that question. *Id.*  at 10.

As to the exemption to meal break requirements for construction workers, Tejeda argues that it does not apply because his work as a mobile sweeper driver is governed by Wage Order 1, which applies to manufacturing occupations, and not Wage Order 16.  *Id.*  at 11-13. He points to a California Department of Labor Standards Enforcement ("DLSE") guidebook entitled, "Which IWC Order" in support of his position.  *Id.*  at 11 (citing Suppl. RJN Ex. 6 ("Guidebook")).

According to Tejeda, the DLSE Guidebook illustrates that "the employees involved in the manufacture of ready-mix cement or concrete are within manufacturing occupations covered by Wage Order 1 and not construction occupations covered by Wage Order 16, such as those employees directly involved in mining of materials." *Id.* at 11-12 (citing Suppl. RJN Ex. 6 at 12, 36 ("including employees involved in manufacturing of ready-mix concrete and cement under a manufacturing occupation") and 30-33 (describing employees directly involved in mining)).

 Tejeda also rejects Defendant's argument that it is exempt as to Tejeda's rest break claim under Wage Order 16 for the same reason, namely, that Wage Order 1 applies instead. *Id.* at 13-14.

Because Defendant is not exempt from California's meal and rest break requirements, Tejeda contends, his claims are based on California law rather than any CBA. *Id.* at 14. Nor does his meal period claim require interpretation of the Meal Period Agreement under the CBA, Tejeda contends, because the agreement he signed only covered his work as a ready-mix driver and not as a mobile sweeper truck driver. *Id.*

Finally, Plaintiff argues that FMSCA preemption does not apply to his claims based on his mobile sweeper driver work, as Defendant conceded at the hearing. *Id.* at 15. For all of these reasons, Tejeda asserts that his derivative claims also do not fail, that he has standing to assert all of his claims on behalf of the putative class, and that he is not required to exhaust the grievance procedure under the CBA. *Id.*

In its supplemental reply, Defendant argues that Tejeda's work as a mobile sweeper driver is covered by the Local 665 CBA because: 1) Tejeda's counsel stipulated to this at the hearing; 2) the evidence in the record establishes that Tejeda was affiliated with the Local 665 during the relevant period; and 3) Tejeda's counsel conceded that Tejeda was paid under the Local 665 CBA, thus binding Tejeda to the terms of that agreement. Dkt. no. 54 (Supp. Reply) at 2-3. Defendant rejects Tejeda's argument that the Local 665 CBA does not cover his work as a mobile sweeper driver because that job is not specifically listed in the CBA, pointing to language in the CBA providing that: "[i]n the event the Employer operates equipment not covered by any of the foregoing classifications . . . a wage rate shall be negotiated at that time for same." *Id.* at 4

1    (quoting Miller Decl., Exhibit H, § 3).

2           Defendant further asserts that Tejeda's meal break claims are preempted under Labor Code

3    section 512 because his work as a mobile sweeper driver fits the definition of "commercial driver"

4    or "construction occupation." *Id.* at 5-7.  As to the former, Defendant cites Section 15210 of the

5    Vehicle Code, which defines "commercial motor vehicle" as "any vehicle or combination of

6    vehicles that requires a class A or class B license[,]" and point to the job description it supplied in

7    support of its Reply stating that mobile sweeper drivers must possess a commercial driver's

8    license.  *Id.* at 5 (citing Baker Reply Decl., Ex. 1). It rejects Tejeda's argument that the job

9    description is not sufficient to show that a mobile sweeper driver is a commercial driver, asserting

10   that "courts routinely use job descriptions and/or the testimony of human resources professionals

11   to demonstrate job duties and requirements for particular positions, including licensure

12   requirements."  *Id.* at 6.

13          As to whether a mobile sweeper driver is a "construction occupation[,]" Defendant rejects

14   Tejeda's argument that Wage Order 1 applies instead of Wage Order 16, arguing that "even if the

15   Manufacturing Wage Order [Wage Order 1] applies generally to CalMat, as a manufacturer of

16   concrete materials  . . . , mobile sweeper drivers and other CalMat employees in construction

17   occupations would also be covered by Wage Order 16, which would supersede Wage Order 1 for

18   those employees."  *Id.* at 6.  Further, Defendant contends, "Labor Code § 512(g)(2) broadly

19   defines 'construction occupation' as 'all job classifications associated with construction . . . ,

20   including work involving alteration, demolition, building, excavation, renovation, remodeling,

21   maintenance, improvement, and repair, and any other similar or related occupation or trade.'" *Id.*

22   This definition encompasses mobile sweeper drivers, Defendant asserts.  *Id.* at 6-7 (citing

23   *Ferguson v. Randy's Trucking, Inc*., 2016 WL 6611131 (E.D. Cal. Nov. 8, 2016); *Shwiyat v.*

24   *Martin Marietta Materials, Inc*., 2023 WL 8811809 (N.D. Cal. Dec. 20, 2023)).

25          Defendant goes on to reiterate its arguments that Tejeda's claims are preempted under the

26   *Burnside* analysis.  *Id*. at 8-15.

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

# III.   ANALYSIS

## A.   Legal Standards Under Rule 56

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "'specific facts showing there is a genuine issue for trial.'" *Id.* (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). "[T]he inquiry involved in a ruling on a motion for summary judgment . . . implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986). The non-moving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). Thus, it is not the task of the court to scour the record in search of a genuine issue of triable fact. *Id.*; *see Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); Fed. R. Civ. P. 56(c)(3).

On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant, *Scott v. Harris*, 550 U.S. 372, 378 (2007), but where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

## B.   Procedural Challenges

As a preliminary matter, the Court addresses the accusations each side has made that the other side has acted procedurally improperly – Tejeda by narrowing the scope of this meal and rest break claims to exclude his work as a ready-mix concrete truck driver in response to the Motion

and Defendant by offering evidence about the mobile sweeper truck driver position in support of its Reply.

### 1.  Whether Tejeda's Narrowing of Claims is Improper

Defendant's assertion that Tejeda has acted improperly by narrowing the scope of his claims has no merit.  Defendant plucks a phrase from *Wasco Prod., Inc. v. Southwall Techs., Inc*., to support its position, but that case is not on point.  *See* Reply at 1 (quoting 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.")).  In *Wasco*, the court found that the plaintiff had not pled in the complaint "the most basic and fundamental element of a civil conspiracy," offering facts related to the alleged civil conspiracy for the first time in his opposition to the defendant's summary judgment motion.  *Id.*  In that context, the court found that the bare allegation of civil conspiracy in the complaint was not sufficient to toll the applicable statutes of limitations on his claims.  *Id.*

In contrast, Tejeda's complaint contains allegations sufficient to meet the requirements of Fed.R.Civ. P. 8(a) and state valid wage and hour claims based on his work for Defendant.  Furthermore, Defendant is in possession of Tejeda's employment records, including the job reclassification form showing that during the claim period he was working primarily as a mobile sweeper driver.  Having provided a declaration from Defendant's vice-president of human resources, Philip Miller, who stated that he had reviewed Tejeda's employment file, Miller Decl. ¶ 4, Defendant cannot now be heard to complain that it was not on notice that Tejeda's claims were based, at least in part, on his work as a mobile sweeper driver.

Nor does Defendant offer any support – such as responses to contention interrogatories – for its assertion that Tejeda has "change[d] his liability theory[.]"  Reply at 1.  Rather, Tejeda has simply narrowed his claims in response to Defendant's motion.  As the purpose of summary judgment motions is to do just that, there is nothing improper about Tejeda conceding certain claims in response to the Motion.  *See Est. of Miller v. Thrifty Rent-A-Car Sys., Inc*., 637 F. Supp. 2d 1029, 1035 (M.D. Fla. 2009) ("Summary judgment is an appropriate mechanism to narrow the scope of a plaintiff's claims.").  Accordingly, to the extent Tejeda's meal period and rest break claims (and derivative claims based thereon) encompass his work as a ready-mix concrete truck

United States District Court
Northern District of California

1    driver, the Motion is GRANTED and those claims are dismissed with prejudice.  The Court will

2    consider Defendant's summary judgment arguments challenging Tejeda's meal period and rest

3    break claims only as they relate to claims based on Tejeda's work as a mobile sweeper truck

4    driver. Further, because Defendant's preemption argument under the HOS regulations is based

5    entirely on Tejeda's work as a ready-mix truck driver, the Court need not address that argument

6    herein.

### 2.  Whether Defendant's Reply Evidence is Improper

8        Tejeda objects to the new evidence and arguments in Defendant's Reply. As a general

9    matter, "reply briefs are limited in scope to matters either raised by the opposition or unforeseen at

10    the time of the original motion." *Burnham v. City of Rohnert Park*, No. C 92-1439 SC, 1992 WL

11    672965, at *5 (N.D. Cal. May 18, 1992).  Furthermore, "[n]ew evidence submitted as part of a

12    reply is improper" because it does not allow the [non-movant] an adequate opportunity to

13    respond." *Townsend v. Monster Beverage Corp*., 303 F. Supp. 3d 1010, 1027 (C.D. Cal. 2018)

14    (quoting *Morris v. Guetta*, 2013 WL 440127, *8 (C.D. Cal. Feb. 4, 2013)). "For this reason, the

15    district court may decline to consider new evidence or arguments raised in reply, and generally

16    'should not consider the new evidence without giving the non-movant an opportunity to

17    respond.'" *Id.* (quoting *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996)).

18        Here, Defendant's new arguments and evidence in its Reply were necessitated by its failure

19    to address in the Motion Tejeda's primary job responsibilities during the time period identified in

20    his complaint.  Instead, Defendant based its arguments in the Motion on a job that Tejada worked

21    only one or two days a month during the relevant time period.  Given that Defendant was in

22    possession of Tejeda's employee file, *see* Miller Decl. ¶ 4, and had produced to Tejeda in

23    discovery a copy of the reclassification form showing that his job title changed to "Driver –

24    Mobile Sweeper" as of November 1, 2020, it is difficult to fathom why it based all of the

25    arguments in the Motion on Tejeda's previous position.

26        Nonetheless, the Court is reluctant to leave unresolved the question of whether Tejeda's

27    claims are preempted to the extent they are based on his work as a mobile sweeper driver as this

28    issue is likely to arise again as the case continues and complicate class certification.  Therefore,

United States District Court
Northern District of California

1    rather than striking Defendant's new evidence or declining to consider it, the Court permitted

2    Tejeda to respond to that evidence and to the new arguments Defendant made in its Reply.

3    Because Tejeda has been given an opportunity to respond to the new arguments and evidence

4    offered by Defendant in connection with its Reply, the Court overrules his objection.

## C.    Whether Tejeda's Claims are Preempted Under Section 301 of the LMRA

### 1.    Legal Standards Governing Preemption

7        Section 301 of the LMRA provides that "[s]uits for violation of contracts between an

8    employer and a labor organization representing employees in an industry affecting commerce . . . ,

9    or between any such labor organizations, may be brought in any district court of the United States

10   having jurisdiction of the parties, without respect to the amount in controversy or without regard

11   to the citizenship of the parties."  29 U.S.C.A. § 185(a).  In *Burnside v. Kiewit Pacific*

12   *Corporation*, 491 F.3d 1053 (9th Cir. 2007), the Ninth Circuit articulated a two-part test to

13   determine whether a cause of action is preempted under Section 301.  First, the court must conduct

14   "an inquiry into whether the asserted cause of action involves a right conferred upon an employee

15   by virtue of state law, not by a CBA."  491 F.3d at 1059.  "If the right exists solely as a result of

16   the CBA, then the claim is preempted, and [the court's] analysis ends there."  *Id.*  If the "right

17   exists independently of the CBA," the court must proceed to the second step, to "consider whether

18   it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'"  *Id.*

19   (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (quoting *Electrical Workers v.*

20   *Hechler*, 481 U.S. 851, 859, n. 3(1987)). "If such dependence exists, then the claim is preempted

21   by section 301; if not, then the claim can proceed under state law."  *Id.* at 1059-60.

22        "[A] claim based on state law is not preempted simply because a court must interpret the

23   CBA 'to determine the proper damages.'" *Cornn v. United Parcel Serv., Inc*., No. C03-2001 TEH,

24   2004 WL 2271585, at *1 (N.D. Cal. Oct. 5, 2004) (quoting *Lingle v. Norge Div. of Magic Chef,*

25   *Inc.*, 486 U.S. 399, 413 n. 12 (1988)). "Nor is a 'creative linkage between the subject matter of the

26   claim and the wording of a CBA provision' sufficient to mandate preemption; instead, 'the

27   proffered interpretation argument must reach a reasonable level of credibility.'"  *Id.* (quoting

28   *Cramer v. Consol. Freightways Inc*., 255 F.3d 683, 692 (9th Cir.2001) (en banc)); *see also Stone*

1   *v. Sysco Corp.*, No. 16-CV-01145-DAD-JLT, 2016 WL 6582598, at *6 (E.D. Cal. Nov. 7, 2016)

2   ("If a cause of action is based on state law . . . it will not be subject to § 301 preemption merely

3   because the defendant refers to the CBA in mounting a defense to the claim.") (citing *Valles v. Ivy*

4   *Hill Corp.*, 410 F.3d 1071, 1076 (9th Cir. 2005) (citations omitted)).

5          Federal courts – including the undersigned – previously found that statutory exceptions to

6   state law wage and hour requirements involving non-negotiable rights, such as meal periods, were

7   affirmative defenses that did not give rise to preemption.  *See, e.g. Young v. Securitas Sec. Servs.*

8   *USA, Inc.*, No. 17-CV-05342-JCS, 2018 WL 1142190, at *2-3 (N.D. Cal. Mar. 2, 2018); *Lopez v.*

9   *Sysco Corp.*, No. 15-cv-04420-JSW, 2016 WL 3078840, at *3-5 (N.D. Cal. Jan. 25, 2016);

10  *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 956 (C.D. Cal. 2014).

11  However, in 2019 the Ninth Circuit reached a different conclusion in *Curtis v. Irwin Indus., Inc.*,

12  913 F.3d 1146, 1153 (9th Cir. 2019).  There, the court found that because the plaintiff fell under a

13  statutory exemption from the state law overtime requirements upon which his claim was based, his

14  "right to overtime exist[ed] solely as a result of the CBA,' and therefore [was] preempted under §

15  301."  913 F.3d at 1154.  Following *Curtis*, courts in this district have concluded that the

16  *Vasserman* line of cases is no longer good law on this point.  *See, e.g., Chatman v. WeDriveU,*

17  *Inc.*, No. 3:22-CV-04849-WHO, 2022 WL 15654244, at *5 (N.D. Cal. Oct. 28, 2022);  *Fennix v.*

18  *Tenderloin Hous. Clinic, Inc.*, No. 20-CV-05207-DMR, 2020 WL 6462394, at *3 (N.D. Cal. Nov.

19  3, 2020).  The undersigned agrees.

20          "[I]n light of the remedial nature of the legislative enactments authorizing the regulation of

21  wages, hours and working conditions for the protection and benefit of employees, the statutory

22  provisions are to be liberally construed with an eye to promoting such protection."  *Indus. Welfare*

23  *Com. v. Superior Ct.*, 27 Cal. 3d 690, 702 (1980). Thus, under California law, exemptions from

24  statutory mandatory wage and hour provisions are "narrowly construed."  *Ramirez v. Yosemite*

25  *Water Co.*, 20 Cal. 4th 785, 794 (1999) (citation omitted). The assertion of an exemption "is

26  considered to be an affirmative defense, and therefore the employer bears the burden of proving

27  the employee's exemption."  *Id.*  at 794-795.

28

United States District Court
Northern District of California

### 2.  Claim One (Minimum Wage Claim)

Defendant's preemption challenge to Tejeda's minimum wage claim is based only on step two of the *Burnside* analysis.  In particular, it argues that his claim is "substantially dependent on analysis of" the CBA and therefore, preempted under Section 301 of the LMRA, because it is based on the theory that Defendant used quarter-hour rounding to determine his start and end times.  Evaluating this claim, Defendant asserts, will require the Court to interpret terms of the CBA defining "start" and "quit" times using quarter hour rounding, including Section 2.2 of the CBA.  *See* Miller Decl., Ex. H (Local 665 CBA), Section 2.2.

As a preliminary matter, the Court must determine whether Defendant has established, as a matter of law, that the Local 665 CBA applies to Tejeda's work as a mobile sweeper truck driver.[5] The Court concludes that it has.

First, Tejeda did not dispute in his original opposition brief that his work was covered by the Local 665 CBA and at the hearing, Tejeda conceded that this work as a mobile sweeper driver was covered by the Local 665 CBA. The Court declines Defendant's invitation to treat counsel's statement at oral argument as a binding judicial admission given the informal nature of the proceeding and that counsel did not have an opportunity to reflect before answering the Court's question. *See In re Twitter, Inc. Sec. Litig*., No. 16-CV-05314-JST, 2020 WL 5904407, at *2 (N.D. Cal. Oct. 6, 2020) ("Given counsel's lack of opportunity for reflection, the fact that the statement came in response to the Court's leading question, and the informal nature of the proceedings, the Court declines to exercise its discretion to treat the statement as a judicial admission"). Nonetheless, counsel's statement at the hearing (and failure to challenge Defendant on this point in his original opposition brief) carries some weight given that this is a threshold issue with respect to many of Defendant's summary judgment arguments.

Second, although the mobile sweeper driver position is not specifically listed in the Local 665 CBA, the CBA makes clear that the list of covered positions is not exclusive.  In particular, in Section 3, it state: "In the event the Employer operates equipment not covered by any of the

---

[5] It is undisputed that the Local 665 CBA applies to Plaintiff's work as a ready-mix driver.

foregoing classifications or equipment of a radically new type, a wage rate shall be negotiated at that time for same."  Miller Decl., Ex. H (Local 665 CBA), Section 3. Tejeda's pay statement indicates that he was paid the "union regular rate" and the "union overtime rate" and that benefit contributions were made on his behalf under the Local 665 CBA.  Miller Decl., Ex. A (pay statement).  There is no evidence in the record of a separate, non-union, rate for Tejeda's work as a mobile sweeper driver; nor is there anything to suggest that the union benefit contributions paid on Tejeda's behalf were limited to his work as a ready-mix driver. Thus, it is undisputed that a union rate was, in fact, offered and accepted for Tejeda's work as a mobile sweeper driver.  Given that it is also undisputed that Tejeda understood that he was affiliated with the Local 665 during the relevant time period, regardless of which job he was working, this evidence is sufficient to establish, as a matter of law, that his work as a mobile sweeper driver was covered by the Local 665 CBA.

Turning to the merits of the dispute, however, the Court finds that the claim is not preempted. Defendant's theory of preemption as to the minimum wage claim relies on the standard applied to rounding articulated in *See's Candy Shops, Inc. v. Superior Ct*., 210 Cal. App. 4th 889, 907 (2012), finding that rounding is permissible under California law so long as the employer's policy is "fair and neutral." Applying that standard, Defendant contends, will require the Court to interpret the terms of the Local 665 CBA, giving rise to preemption under step two of the *Burnside* analysis.  The Court, however, concludes that *See's Candy* does not accurately state California law and that Tejeda's claim is not "substantially dependent" on interpreting the CBA.

In *See's Candy*, the plaintiff asserted a California minimum wage claim based on her employer's policy of rounding start and end times to the nearest tenth of an hour in calculating the wages of hourly employees, even though the timekeeping system used by her employer tracked the actual times employees clocked in and out of work.  210 Cal. App. 4th at 692-693.  The court dismissed the claim, adopting a federal regulatory standard permitting rounding to the nearest tenth of an hour.  *Id.* at 907.  The court reasoned that no California statute or case law prohibited the practice of rounding, and in the absence of state authorities, California courts generally look to federal regulations under the Federal Fair Labor Standards Act ("FLSA").  *Id.* at. 901, 903.

1    The court in *See's Candy* further found that the policies underlying the federal regulation

2    were consistent with California labor law, explaining:

3            The policies underlying the federal regulation—recognizing that
         time-rounding is a practical method for calculating worktime and can
4            be a neutral calculation tool for providing full payment to
         employees—apply equally to the employee-protective policies
5            embodied in California labor law. Assuming a rounding-over-time
         policy is neutral, both facially and as applied, the practice is proper
6            under California law because its net effect is to permit employers to
         efficiently calculate hours worked without imposing any burden on
7            employees.

8    *Id.* at 903.  The court went on to hold that "the rule in California is that an employer is entitled to

9    use the nearest-tenth rounding policy if the rounding policy is fair and neutral on its face and 'it is

10   used in such a manner that it will not result, over a period of time, in failure to compensate the

11   employees properly for all the time they have actually worked.'" *Id.*  at 907 (quoting 29 C.F.R. §

12   785.48; DLSE Manual §§ 47.1, 47.2); *see also AHMC Healthcare, Inc. v. Superior Court*, 24

13   Cal.App.5th 1014 (2018) (following *See's Candy* and finding that practice of rounding to the

14   nearest quarter hour did not violate California law).

15           The reasoning and holding of *See's Candy* was rejected, however, in *Camp v. Home Depot*

16   *U.S.A., Inc.*, 84 Cal. App. 5th 638 (2022). Moreover, at least one California court has followed

17   *Camp*, *see Woodworth v. Loma Linda Univ. Med. Ctr.*, 93 Cal. App. 5th 1038, 1056 (2023), reh'g

18   denied (Aug. 17, 2023), while a federal district court recently applied the reasoning of *Camp* to

19   conclude that rounding is not permissible under Oregon labor law.  *See Eisele v. Home Depot U.S.A.,*

20   *Inc.*, 643 F. Supp. 3d 1166, 1175 (D. Or. 2022).  The undersigned agrees with the *Woodworth* court

21   that the reasoning in *Camp* is more persuasive than *See's Candy*.  Therefore, although the California

22   Supreme Court has granted a petition for review of the *Camp* decision, the undersigned concludes

23   that the reasoning of that case will likely be approved by the California Supreme Court. The Court

24   also notes that the California Supreme Court made clear when it granted the petition for review in

25   *Camp* that the court of appeal's decision "may be cited, not only for its persuasive value, but also

26   for the limited purpose of establishing the existence of a conflict in authority that would in turn

27   allow trial courts to exercise discretion under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57

28   Cal.2d 450, 456, . . . to choose between sides of any such conflict."  *Camp v. Home Depot U.S.A.,*

United States District Court
Northern District of California

523 P.3d 391 (Cal. 2023).

In *Camp*, the court of appeal reversed a judgment for the employer on a rounding claim based on quarter hour rounding, holding that "if an employer . . . can capture and has captured the exact amount of time an employee has worked during a shift, the employer must pay the employee for 'all the time' worked." 84 Cal.App.5th at 660.  The court relied on two California Supreme Court decisions issued after *See's Candy* was decided. The first, *Troester v. Starbucks Corp.*, 5 Cal.5th 829 (2018), addressed – and declined to adopt – the de minimis doctrine found in federal labor law, which "excuse[s] the payment of wages for small amounts of otherwise compensable time upon a showing that the bits of time are administratively difficult to record." 5 Cal. 5th at 835. The *Troester* court observed that "[n]othing in the language of the wage orders or Labor Code show[ed] an intent to incorporate the federal de minimis rule . . . ."  *Id.* at 841. The *Camp* court also pointed to *Donohue v. AMN Services, LLC*, 11 Cal.5th 58 (2021), in which the California Supreme Court held that "employers cannot engage in the practice of rounding time punches . . . in the meal period context. The meal period provisions are designed to prevent even minor infringements on meal period requirements, and rounding is incompatible with that objective." 11 Cal. 5th at 61.[6]

The court in *Camp* rejected the employer's position that its rounding policy was lawful for four reasons.  First, it pointed to the California Supreme Court's observation in *Troester* that "the Labor Code and the relevant wage order 'contemplate[ ] that employees will be paid for all work performed.'" 84 Cal. App. 5th at 657 (quoting *Troester*, 5 Cal.5th at 840 and citing Lab. Code, § 510, subd. (a) (requiring payment for "[a]ny work"); Cal. Code Regs., tit. 8, § 11070, subds. 2(G) (" '[h]ours worked' " means "all the time" the employee has worked), 4(A) (minimum wage must be paid "for all hours worked") & 3(A) (overtime pay required "for all hours worked" in excess of eight hours in a day or over 40 hours in a week)).  The court in *Camp* found that the evidence showed that the plaintiff had not been paid for all work performed.  *Id.*

Second, the *Camp* court cites *Troester*'s statement that "the regulatory scheme of which

---

[6] At oral argument, Tejeda confirmed that he is claiming in this action that CalMat's rounding policy resulted not only in failure to pay minimum wage but also meal period violations to the extent it resulted in meal periods that were less than the thirty-minute required time period.

United States District Court
Northern District of California

the relevant [California] statutes and wage order provisions are a part is . . . concerned with 'small things.' " *Id.* (quoting 5 Cal. 5th at 844). The *Camp* court continued, "[b]y referring to 'the wage order's remedial purpose requiring a liberal construction, its directive to compensate employees for all time worked, the evident priority it accorded that mandate notwithstanding customary employment arrangements, and its concern with small amounts of time' [5 Cal. 5th at 847], the [California Supreme Court] has indicated that even small amounts of worktime—indeed amounts measured in minutes—are compensable where the worktime is regularly occurring." *Id.* The *Camp* court further found that in that case, the evidence showed that "a few extra minutes of worktime periodically lost due to a purportedly neutral time rounding policy" added up over time, with the plaintiff losing more than seven hours of worktime due to his employer's quarter-hour rounding policy over a period of approximately four and a half years. *Id.*

The court in *Camp* observed that the federal rounding regulation "requires only that the rounding practice over time average out to 'employees' as a whole, not necessarily as to an individual employee." *Id.* (citing 29 C.F.R. § 785.48(b) (2021)). That regulation has "no analog in the Labor Code or in the applicable wage order," the court found. Under the guidance in *Troester*, the court found that adopting the federal standard on rounding would be improper, reasoning as follows:

> The California Supreme Court has " ' "cautioned against 'confounding federal and state labor law' [citation] and explained 'that where the language or intent of state and federal labor laws substantially differ, reliance on federal regulations or interpretations to construe state regulations is misplaced.' " ' [Citation.]" (*Troester*, supra, at p. 839, 235 Cal.Rptr.3d 820, 421 P.3d 1114.) Here, there is not merely a difference in language, but a complete absence of language, in the Labor Code or in the applicable wage order, authorizing time rounding that results in the underpayment of an individual employee for all time worked, where the employer can capture and has captured the employee's worktime in minute increments. Further—adapting the California Supreme Court's language in *Troester*—although time rounding "has been incorporated into the Code of Federal Regulations for over 50 years, neither the Labor Code statutes nor any wage order has been amended to recognize [a time rounding exception to the requirement that an employee be paid for all time worked]. [*Home Depot*] cites no statutory or regulatory history, and we have found none, that indicates an intent by the IWC or the Legislature to impliedly adopt such a rule." (*Troester*, supra, at p. 841, 235 Cal.Rptr.3d 820, 421 P.3d 1114; see *Donohue*, supra, 11 Cal.5th at p. 71, 275 Cal.Rptr.3d

United States District Court
Northern District of California

422, 481 P.3d 661 [federal rounding regulation "first promulgated in 1961"].)

*Id.* at 657-58.

Finally, the *Camp* court pointed to the California Supreme Court's discussion in *Donohue* of the impact of technological advances on the ability of employers to record employee time, citing the *Donahue* court's observations that "rounding was developed as a means of 'efficiently calculat[ing] hours worked' and wages owed to employees [citation] and is useful 'in some industries, particularly where time clocks are used' [citation]. But technological advances may help employers to track time more precisely, and 'employers are in a better position than employees to devise alternatives . . . .' [Citation.]" *Id.* at 658 (quoting *Donohue*, 11 Cal.5th at 73). The *Camp* court noted that in *Donohue*, "[t]he California Supreme Court stated that '[a]s technology continues to evolve, the practical advantages of rounding policies may diminish further.'" *Id.* (quoting 11 Cal. 5th at 74). It further observed that in *Camp*, it was "not clear that any efficiencies were gained by [the employer] in capturing time worked in minutes by plaintiff Camp and then rounding that time to the nearest quarter hour." *Id.*

The undersigned finds that the reasoning in *Camp* is persuasive and that the rule articulated in *See's Candy* is not a correct statement of California labor law. Consequently, Defendants' reliance on that case to support its position that Tejeda's minimum wage claim requires the Court to interpret the CBA is misplaced.

Even if the California Supreme Court were to approve rounding and adopt the *See's Candy* approach, however, the Court does not find that the provision in the CBA providing for quarter hour rounding requires interpretation. Rather, it appears to be undisputed that Plaintiff's start and end time was rounded in quarter-hour increments, and Defendant's own evidence confirms that CalMat's timekeeping system, Kronos, applies quarter hour rounding. *See* Miller Decl. ¶ 14.

In its Reply brief, Defendant makes the vague statement that the Court would have to interpret the Local 665 CBA "to determine the scope of CalMat's rounding policy, and if rounded start and end times could ever cause Plaintiff's wages to fall below the state minimum, which in 2023 was $15.50, still about half of Plaintiff's regularly hourly rate of $31." Reply at 12. But it points to no specific language in the CBA that would have any impact on those questions.

United States District Court
Northern District of California

32

Defendant also argues in its Reply that "Plaintiff's claim that he was not compensated for all hours worked requires interpretation 'at a minimum' of actual time worked." *Id.* (citing *Rodriguez v. Gonsalves & Santucci, Inc.*, No. 21-CV-07874-LB, 2022 WL 161892, at *5 (N.D. Cal. Jan. 18, 2022)).   It points to Section 2.9 of the CBA, which "provides that '[t]he period of working time within the meaning of this Agreement shall be from the time the employee starts work until the employee stops work. The servicing of equipment by drivers shall be performed during the regular shift.'" *Id.* (citing Motion at 3-4; Miller Decl. ¶ 13, Exhibit H, Section 2.9). According to Defendant, "[t]hese provisions are critical in determining whether Plaintiff was required to work off the clock, because Plaintiff will need to show that he, in fact, performed work, under the CBA, that was uncompensated when he clocked in and out." *Id.*

The only authority Defendant cites in support of this argument is *Rodriguez v. Gonsalves & Santucci, Inc.*, No. 21-CV-07874-LB, 2022 WL 161892, at *5 (N.D. Cal. Jan. 18, 2022)).   In that case, the plaintiff claimed that the defendant failed to pay minimum wages for off-the-clock activity, such as making phone calls or driving. *Id.*   Because the CBA addressed "compensation for activities such as show-up expenses or actual hours worked[,]" the court concluded that "[a]t minimum, resolution of the claims [would] require[ ] interpretation of CBA terms such as 'actual hours worked' and 'show up expenses.'" *Id.*   Here, however, Tejeda's theory is not based on allegations about off-the clock work and does not turn on what activities are compensable under the CBA.  Nor has Defendant pointed to any evidence that the time for which Tejeda was not paid as a result of rounding down in any way correlates to activities that may (or may not) be compensable under the CBA.  Therefore, *Rodriguez* is not on point and this argument is not persuasive.

Defendant relies heavily on *Cornn v. United Parcel Serv., Inc.*, No. C03-2001 TEH, 2004 WL 2271585, at *1 (N.D. Cal. Oct. 5, 2004), but that case also does not support its position.  In *Cornn*, the court found that wage and hour claims asserted under California Labor Code sections 222 (making it unlawful to withhold from an employee "any part of the wage agreed upon") and 223 (making it unlawful to "secretly pay a lower wage while purporting to pay the wage designated by statute or by contract") were preempted under Section 301 of the LMRA, rejecting

the plaintiff's argument that "a claim based on a nonnegotiable state-law right can *never* be preempted."  2004 WL 2271585, at *1.  The court reasoned as follows:

> The Supreme Court has already rejected that proposition, noting that "[i]t is conceivable that a State could create a remedy that, although nonnegotiable, nonetheless turned on the interpretation of a collective-bargaining agreement for its application. Such a remedy would be pre-empted by § 301." *Lingle v. Norge Div. of Magic Chef,* Inc., 486 U.S. 399, 407 n. 7, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). Thus, the same general rule applies, regardless of whether the right at issue is nonnegotiable.

*Id.*  The court in *Cornn* went on to conclude that the plaintiff's claims under sections 222 and 223 were preempted because the state created a remedy that was made expressly dependent on the agreement of the parties.  *Id.*  In particular, the court found that "[i]n addition to determining the wage rate, the Court would have to interpret the CBA—including the 'fair day's work for a fair day's pay' provision—to determine the scope of work and other terms and conditions of employment agreed upon by Plaintiffs and UPS."  *Id.*

Here, in contrast to *Cornn*, the statutory provision upon which Tejeda bases his minimum wage claim, California Labor Code section 1194, does *not* depend on the parties' agreement.  To the contrary, it provides:

> *Notwithstanding any agreement to work for a lesser wage*, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

Cal. Lab. Code § 1194(a) (emphasis added).  The right created under this provision, unlike the right at issue in *Cornn*, is non-waivable, and therefore "[t]he rule that a state claim is preempted if it is necessary to construe the collective bargaining agreement has no relevance to the present case."  *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1082 (9th Cir. 2005) ("We need not, indeed may not, construe the . . . collective bargaining agreement in order to consider whether a waiver exists because any provision of the collective bargaining agreement purporting to waive the right to meal periods would be of no force or effect: The right in question is plainly nonnegotiable.") (citing Cal. Lab. Code § 219; *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1111 (9th

34

Cir. 2000)).

The Court also finds unpersuasive Defendant's reliance on *Avila v. Kiewit Corp*., No. 2:19-CV-1295-SK, 2021 WL 4732575 (C.D. Cal. June 17, 2021), *Pyara v. Sysco Corp*., No. 215CV01208JAMKJN, 2016 WL 3916339 (E.D. Cal. July 20, 2016) and *Mejia v. DHL Express (USA), Inc*., No. CV 15-890-GHK (JCX), 2016 WL 9450680 (C.D. Cal. Feb. 25, 2016).  In all of these cases, the court rejected the employers' preemption arguments under Section 301 because the CBAs in those cases did not contain terms related to the plaintiffs' claims that would need to be interpreted.  None held that the mere existence of a relevant term in the CBA would be sufficient to give rise to preemption, however.  Indeed, in *Mejia*, in which the plaintiff asserted claims based on rounding, the court found that the claims were not preempted not only because the CBA was "silent" as to rounding but also because "[e]ven assuming Defendants' rounding policies [were] part of the CBAs, determining whether the [employer's rounding] policies compl[ied] with California law entail[ed] only a reference to or consideration of the terms of the CBAs, not an interpretation of those terms."  2016 WL 9450680, at *3. Thus, none of these cases establishes that Tejeda's claims based on rounding are preempted under Section 301 simply because the CBA contains a term that permits rounding, contrary to Defendant's suggestion.

For these reasons, the Court finds that Tejeda's minimum wage claim is not preempted under the LMRA.

### 3.  Claim Two (Meal Period Claim)

Defendant contends Tejeda's meal period claim is preempted under both steps one and two of the *Burnside* analysis. At step one, it asserts that Tejeda is exempted from the meal period requirements of California Labor Code section 512 and therefore, any right to meal periods he may have comes solely from the meal period provision in the CBA, giving rise to preemption under Section 301 of the LMRA.  At step two, Defendant contends Tejeda's claim requires interpretation of the meal period provision in the CBA and therefore, the meal period claim is preempted for this reason as well. The Court rejects both arguments.

a.  Legal Standards Governing Meal Period Claims

California Labor Code § 226.7 prohibits employers from requiring employees to work

during meal or rest periods. Section 512 of the same code prohibits employers from requiring that employees work for extended periods of time without meal periods. In particular, California Labor Code Section 512(a) sets the following meal period requirements:

> An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

Cal. Lab. Code § 512(a). Under subsection (b), however, "the Industrial Welfare Commission may adopt a working condition order permitting a meal period to commence after six hours of work if the commission determines that the order is consistent with the health and welfare of the affected employees." Cal. Lab. Code § 512(b).

Further, there are exemptions for employees "employed in a construction occupation" or "as a commercial driver" so long as "[t]he employee is covered by a valid collective bargaining agreement" and the collective bargaining agreement "expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate." Cal. Lab. Code §§ 512(e), (f). Under Cal. Labor Code section 512(g)(1), the term "commercial driver" is defined as "an employee who operates a vehicle described in Section 260 or 462 of, or subdivision (b) of Section 15210 of, the Vehicle Code." Under Section 260 of the California Vehicle Code, a "commercial vehicle" is "a motor vehicle of a type required to be registered under this code used or maintained for the transportation of persons for hire, compensation, or profit or designed, used, or maintained primarily for the transportation of property." Section 15210, subd. (b) of the California Vehicle Code defines "commercial motor vehicle" as "any vehicle or combination of vehicles that requires a class A or class B license, or a class C license with an endorsement issued pursuant to paragraph

1     (2), (3), (4), or (5) of subdivision (a) of Section 15278."

2         According to the California DMV's Commercial Driver handbook, a commercial class A

3 or B license is required for a single vehicle with a gross vehicle weight rating ("GVWR") or gross

4 vehicle weight ("GVW") of more than 26,000 pounds; a combination of vehicles with a gross

5 combined weight of 26,0001 pounds or more; a 3 or more axle vehicle weighing over 6,000

6 pounds; a bus with a gross vehicle weight rating of more than 26,000 pounds; a vehicle towing a

7 trailer or other vehicle with a GVWR of 10,001 pounds or more; a farm labor vehicle with

8 endorsement. Supp. Supp. RJN Ex. 3 (Commercial Driver Handbook) at 5.[7]

9         The term "construction occupation" in Section 512 is defined as "all job classifications

10 associated with construction by Article 2 (commencing with Section 7025) of Chapter 9 of

11 Division 3 of the Business and Professions Code, including work involving alteration, demolition,

12 building, excavation, renovation, remodeling, maintenance, improvement, and repair, and any

13 other similar or related occupation or trade." Cal. Lab. Code § 512(g)(2).

14         Wage Orders 1 and 16 address, *inter alia*, meal period requirements for workers in the

15 Manufacturing Industry (Wage Order 1) and for "on-site occupations in the construction, drilling,

16 logging and mining industries" (Wage Order 16).  Both require that workers be afforded meal

17 periods.  *See* Wage Order 1, § 11; Wage Order 16, § 10.  Wage Order 16, however, contains

18 exemptions as to employees who are covered by a qualifying collective bargaining agreement.  In

19 particular,  Wage Order 16 provides:

20             Subsections (A), (B), and (D) of Section 10, Meal Periods, shall not

21             apply to any employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the

22             agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not

23             less than 30 percent more than the state minimum wage.

24 Wage Order 16, § 10(E).

United States District Court
Northern District of California

---

[7] At the July 31, 2024 motion hearing, Defendant stipulated that the weight thresholds Tejeda has cited based on the DMV handbook are an accurate statement of California law.  .

b.  *Burnside* Step One: Whether Tejeda is Exempt from Meal Period Requirements Under Section 512 and Wage Order 16

After Tejeda narrowed his meal period claim to cover only his work as a mobile sweeper truck driver, Defendant asserted in its Reply that Tejeda was exempt under Section 512 because: 1) that position also qualified him as a "commercial driver" because he was required to maintain a commercial license to drive the mobile sweeper truck; and 2)  he qualifies as exempt on the basis that as a mobile sweeper truck driver he was "employed in a construction occupation" under Section 512(f)(1); 3) he qualifies as exempt from meal period requirements under Wage Order 16, which covers construction workers and provides a separate exemption from meal period claims for employees covered by a collective bargaining agreement.

i.  "Commercial driver" exemption under Section 512

To prevail on its "commercial driver" affirmative defense, Defendant must establish that Tejeda was bound by a collective bargaining agreement that meets the requirements of California Labor Code section 512(e) and that he worked as a commercial driver during the relevant period. At the July 31, 2024 motion hearing, Plaintiff conceded that the Local 665 CBA meets the requirements of Section 512(e), namely, that it "expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate." Cal. Lab. Code § 512(e). Furthermore, the Court has already found that Tejeda was bound by the Local 665. The only remaining question is whether Defendant has established, based on the undisputed evidence, that Tejeda was a "commercial driver."  The Court finds that it has not.

Defendant relies on California Vehicle Code section 15210(b), which is one of the definitions of "commercial driver" incorporated into California Labor Code section 512(g), to establish that a mobile sweeper driver is a "commercial driver" for the purposes of Labor Code section 512.  Section 15210(b)(1) provides that " 'Commercial motor vehicle' means any vehicle or combination of vehicles that requires a class A or class B license, or a class C license with an endorsement issued pursuant to paragraph (2), (3), (4), or (5) of subdivision (a) of Section 15278."

38

Cal. Veh. Code § 15210(b)(1).  Defendant points to the job description that its declarant says is for the mobile sweeper driver position for "all of Vulcan's subsidiaries and affiliated entities operating in the State of California, including CalMat Co."  Baker Decl. ¶ 2 & Ex. 1. As discussed above, the job description states that mobile sweeper drivers must "possess a commercial driver's license and have a valid DOT physical or the ability to get one." Baker Decl., Ex. 1. Defendant asserts that this evidence is sufficient because it is the same as the evidence offered in *Shwiyat v. Martin Marietta Materials, Inc*., No. 3:23-CV-00283-JSC, 2023 WL 8811809, at *4 (N.D. Cal. Dec. 20, 2023), in which the court found the evidence to be sufficient to warrant entry of summary judgment in the defendant's favor on the same issue, but that case is distinguishable.

In *Shwiyat*, the plaintiff, who was a ready-mix driver, brought meal period claims under California law and the employer asserted that it was exempt under Section 512(e) because the plaintiff was a commercial driver.  2023 WL 8811809, at *4, 5.  The employer offered testimony by the human resources manager relating to the job responsibilities of ready-mix truck drivers and licensure requirements, as well as testimony that "[t]hrough [her] years of experience providing human resources services for . . . [the employer], [she has] knowledge [of] the ready-mix business including various regulations that would cover the company's ready mix drivers."  *Id.* (quoting Reedy Decl. ¶ 2).  She further stated that "drivers of 'ready-mix trucks . . . are required to have either a Class A or Class B commercial drivers' license.'"  *Id.* (quoting Reedy Decl. ¶¶ 4-5).  The court found that this evidence was sufficient to establish, as a matter of law, that the plaintiff was exempt under the "commercial driver exemption," rejecting the plaintiff's argument that a human resources manager was not qualified to opine on this issue based on its conclusion that the human resources manager had "personal knowledge of job requirements for particular positions, including licensure requirements."  *Id.* at *5.

The declaration offered here, in contrast to the one in *Shwiyat*, does not include any attestation that Baker is familiar with the regulations that cover licensure for mobile sweeper truck drivers.  Thus, the Court is left with the bare  statement in a job description that mobile sweeper drivers must "possess a commercial driver's license and have a valid DOT physical or the ability to get one."  Without evidence making clear that the commercial driver's license requirement is

more than a company policy and actually reflects the regulations that govern licensure of mobile sweeper trucks (including the ones Tejeda drove), Defendant has not met its burden. First, there is nothing in the record to indicate that California law requires a commercial license for this class of vehicles. There is also nothing in the record that addresses whether the particular mobile sweeper trucks Tejeda drove for Defendant required a commercial license to drive, leaving open the possibility that this job requirement was simply intended to ensure that drivers at *other* locations where Defendant operates mobile sweeper trucks that *do* require commercial licenses would have the proper license. It is even possible that this requirement was adopted by Defendant to ensure that mobile sweeper drivers could drive other types of vehicles on occasion, as did Tejeda when he worked on occasion as a ready-mix driver.[8]

Defendant's reliance on *Stone v. Sysco Corp.*, 2016 WL 6582598, at *6 (E.D. Cal. Nov. 7, 2016) is also misplaced. *See* Reply at 5 (citing to *Stone* as the sole example in support of its claim that "[o]ther courts have held that simply identifying a plaintiff as a 'truck driver' in a Complaint fits the definition of a commercial driver, under section 512(e)."). In *Stone*, the court addressed a motion to dismiss meal break claims on the basis of LMRA preemption in which the defendant asserted that the plaintiff was a commercial driver under Section 512(e) and thus exempt. 2016 WL 6582598, at *6-7. The court rejected the argument under *Burnside*. *Id.* In particular, at step one, it found that because "meal period rights are considered 'non-negotiable' under California law, [the] plaintiff's claims [were] not subject to preemption under LMRA § 301." *Id.* In reaching that conclusion, the court followed the *Vasserman* line of cases and treated the plaintiff as a commercial driver "for the purposes of this analysis" based on the allegation in the complaint that the plaintiff drove a truck. *Id.* at *6 n. 8. The *Stone* court went on to find at step two of the *Burnside* analysis that the plaintiff's meal period claim did not "substantially depend" upon

---

[8] The Court notes that the evidence offered in Defendant's reply in connection with the mobile sweeper position is even more scant than the evidence it originally offered to show that Tejeda, as a ready-mix driver, was a commercial driver. *See* Miller Decl. ¶ 9 & Ex. E. In particular, Defendant offered not only a job description for that position but also the testimony of Defendant's vice president of human resources stating that "[b]ased on [his] personal knowledge of CalMat's operations and a review of Plaintiff's job duties, [he knew] that, as a ready-mix truck driver, CalMat required Plaintiff to 'possess and maintain' a valid Commercial Class A or B driver's license." Miller Decl. ¶ 9.

United States District Court
Northern District of California

1   analysis of the relevant CBA because the CBA provisions cited by the defendant were not

2   ambiguous and the defendant did not identify any dispute between the parties as to the application

3   of these provisions.  *Id.*  at *8.

4        *Stone* does not support Defendant's position because, as discussed above, the *Vasserman*

5   line of cases is no longer good law in the wake of the Ninth Circuit's decision in *Curtis*.

6   Moreover, while the court assumed for the purposes of its analysis in that case that the plaintiff

7   was a commercial driver, it did not need to actually decide that question because either way, the

8   claim would not be preempted under the approach the court adopted in its analysis.

9        Therefore, the Court finds that Defendant is not entitled to summary judgment based on the

10  "commercial driver" exemption.

11           ii.  "Construction Occupation" Under Section 512 and Wage Order 16

12       In the Complaint, Tejeda relied, in part, on Wage Order 1 in support of his claims.  Wage

13  Order 1 governs wages, hours and working conditions in the manufacturing industry.  In the

14  Motion, Defendant did not challenge Tejeda's reliance on Wage Order 1, but after Tejeda made

15  clear that his meal period claim was based only on his work as a mobile sweeper driver, Defendant

16  argued that Wage Order 16 applied instead.  Reply at 4-6; Supp. Reply at 6-7.  That wage order

17  contains exemptions from meal period and rest break claims, as discussed above.  The Court finds

18  that Defendant has failed to establish that it is entitled to summary judgment on this ground.

19       Wage Order 16 covers "on-site occupations in the construction, drilling, logging and

20  mining industries" and provides that it "supersedes any industry or occupational order for those

21  employees employed in occupations covered by this Order."  Wage Order 16, § 1(F). Thus, while

22  Wage Order 1 may apply generally to CalMat, as a manufacturer of concrete materials, Defendant

23  contends, Tejada's work as a mobile sweeper driver falls under Wage Order 16 because of the

24  nature of that work.

25       According to Defendant, Tejeda's description of his work as a mobile sweeper driver in his

26  declaration, quoted above, establishes both that Tejeda's work was "on-site" and that it was "in the

27  construction, drilling, logging [or] mining industries."  The Court disagrees.

28       Under Wage Order 16, "'[c]onstruction [o]ccupations' mean all job classifications

associated with construction, including but not limited to, work involving alteration, demolition, building, excavation, renovation, remodeling, maintenance, improvement, and repair work by the California Business and Professions Code, Division 3, Chapter 9, §§ 7025 et seq., and any other similar, or related occupations, or trades." Cal. Code Regs. tit. 8, § 11160(2)(C). Defendant highlights the words "excavation[,]" "maintenance" and "any other similar or related occupation or trade" in this definition, and argues that drivers who engages in these activities and who "operate in conjunction with 'a construction, oil drilling, mining or logging site[ ]'" fall under Wage Order 16. Supp. Reply at 6-7 (quoting *Ferguson v. Randy's Trucking, Inc*., 2016 WL 6611131 (E.D. Cal. Nov. 8, 2016); and citing *Shwiyat*, 2023 WL 8811809 at *10). Under the facts here, Defendant asserts, Tejeda "operated in conjunction with" a construction site because it is undisputed that "CalMat manufactures construction materials." *Id.* at 7 (citing Opposition at 3). Defendant's broad theory, however, is not consistent with the cases it cites.

In *Ferguson*, the plaintiffs were truck drivers who worked for a company that provided trucking services for clients in the oil industry but also clients outside of the oil industry. *Ferguson v. Randy's Trucking, Inc*., 2016 WL 6611131, at *1. The plaintiffs worked "onsite at various drilling locations assisting with drilling and extraction operations" but also drove between job sites, some of which were not drilling sites, hauling materials such as water, mud and equipment. *Id.* The plaintiffs asserted claims under Wage Order 16, asserting that they worked "onsite" in a drilling occupation, but the defendant argued that Wage Order 9, governing the transportation industry, applied. *Id.* at * 2. The court agreed with the defendant. *Id.* at *8.

The *Ferguson* court relied, in part, on a 2011 DLSE Opinion Letter that stated:

> A driver will be subject to Order 16 if he or she operates on or at or in conjunction with a construction, oil drilling, mining or logging site or delivers materials or personnel from such a site to a location off the site which is owned, operated or controlled by a contractor or other employer engaged in work at the construction, oil drilling, mining or logging site or delivers materials or personnel from a location off site which is owned or operated by such a contractor or employer to the construction, oil drilling, mining or logging site.

Department of Labor Standards Enforcement, The DLSE Enforcement Policies and Interpretations Manual, p. 50-11, ¶ 50.9.7 (Mar. 2007) ("DLSE Manual"), available at

42

http://www.dir.ca.gov/dlse/DLSEManual/dlse_enfcmanual.pdf.  Applying this guidance, the court found that "[w]hile the term 'on site' is not defined in [Wage Order 16], the job examples given by the DLSE suggest that the term generally encompasses positions where the workers complete their work *at the drilling location*." *Id.* (emphasis added).  Because the plaintiffs in that case "did not operate solely 'on or at or in conjunction with [an] . . . oil drilling' site" but instead were "required to come and go from the [drilling site] to different locations, and 'sometimes drove hundreds of miles a day[,]' " the court found that they did not satisfy Wage Order 16's "on-site requirement. *Id.*  The court further found that the plaintiffs were covered by Wage Order 9 because they transported materials "to a contractor or other employer on a construction, oil drilling, mining or logging site from an off-site location not owned, operated or controlled by a contractor or other employer engaged in work at the construction, oil drilling, mining or logging industry." *Id.* at *7.

Here, the locations where Tejeda worked are engaged in the manufacture of ready-mix cement; they are not "construction, oil drilling, mining or logging" sites. Thus, *Ferguson* does not support Defendant's position that because the product that is manufactured at these sites will eventually be used by third parties who purchase the product for use on construction sites, Tejeda's work was "in conjunction" with a construction site. Nor has Defendant cited in case where such a broad theory has been espoused.

Likewise, *Shwiyat* does not support its position.  Defendant points to the court's conclusion in that case as to one group of employees, who worked at a quarry, that Wage Order 16 applied because they were engaged in a construction occupation. 2023 WL 8811809, at *9.   But there, the evidence was undisputed that these employees worked at an above-ground mine "digging trenches, helping with excavations, [and] picking up rocks that fall off trucks." *Id.* As these activities were undisputedly "on-site" at a mining site and involved "alteration, demolition, building, excavation, renovation, remodeling, maintenance, improvement," or "repair" under Cal. Lab. Code section 512(g)(2)'s definition of "construction occupation," the court had no difficulty concluding these individuals were involved in a "construction occupation." *Id.*  As discussed above, the facts here are different as Tejeda's job site was not a "construction, oil drilling, mining or logging" site.

43

United States District Court
Northern District of California

1    Similarly, *Plagakis v. Outsource Util. Contractor Corp.*, No. 1:23-CV-00798-CDB, 2023

2    WL 8602161(E.D. Cal. Dec. 12, 2023) and *Lopez v. W. Coast Arborists, Inc.*, No. 2:23-CV-02734

3    WBS DB, 2024 WL 382368, at *1 (E.D. Cal. Feb. 1, 2024), cited by Defendant in its

4    Supplemental Reply, *see* Supp. Reply at 7 n. 7, are not on point. In *Plagakis*, the court found that a

5    "yard traffic technician" who provided traffic control at construction sites was engaged in a

6    construction occupation and fell under Wage Order 16 because that order expressly included "flag

7    persons" as construction workers and the construction occupation definition in Labor Code section

8    512(f) included employees involved in "the preparation [or] removal of roadway construction

9    zones, lane closures, flagging, or traffic diversion." *Plagakis*, 2023 WL 8602161, at *4-5. (E.D.

10   Cal. Dec. 12, 2023).  In *Lopez*, the defendant was a tree and landscape maintenance company that

11   performed "tree removal, tree pruning, stump removal, or engages in tree or limb cabling or

12   guying," apparently at construction sites.  2024 WL 382368, at *3.  In that case, it was undisputed

13   that the defendant was a construction contractor and that its employees were engaged in a

14   "construction occupation"; and therefore, the court found that the defendant was exempt under

15   Section 512.   Neither of these cases involves facts similar to the facts of this case and the holdings

16   of these courts have no bearing on the issue before the Court here.

17   While the cases cited by Defendant offer no support for its contention that Tejeda's work

18   as a mobile sweeper driver work was a construction occupation, the DLSE guidebook entitled

19   "Which IWC Order" supports the conclusion that Tejeda's work was covered by Wage Order 1

20   and not Wage Order 16.  *See* Supp. RJN, Ex. 6 (Guidebook). The Guidebook specifies that the

21   cement and concrete industries are covered by Wage Order 1, covering the manufacturing

22   industry.  *Id.*  at 12, 36.  Construction occupations, on the other hand, include various "crafts when

23   the worker is participating in on-site construction activities[,]" and covers such occupations as

24   "cement masons[,]" "hazardous material cleanup and handling (when contractor's license is

25   required[,]" and landscape installers[.]"  *Id.* at 30-31.

26   Defendant's assertion that the Guidebook actually supports its position is unpersuasive.

27   Defendant asserts:

28       Under the umbrella of Wage Order 16, the guidebook lists a variety

44

> of jobs including: Teamsters (when working on-site), batch plant laborer, concrete crew rodders and spreaders. (Supp. Br., RJN, Ex. 6). While ready-mix drivers are specifically excluded from this category, falling instead under Wage Order 1, all other concrete-related jobs and Teamsters (such as Plaintiff) who work onsite, fall under Wage Order 16.

Supp. Reply at 7.   Defendant continues, "because Plaintiff worked onsite at a batch plant, where concrete is manufactured, the most closely aligned position to Plaintiff's mobile sweeper job would be a batch plant laborer or member of the Teamsters who works onsite." *Id.*

The jobs that Defendant lists, however, do not accurately reflect the contents of the Guidebook.  The Guidebook states that "Teamster (construction)" falls under Wage Order 16 but Defendant omitted the limitation to "construction" to suggest that *all* Teamsters are covered by Wage Order 16.  Guidebook at 45.  Similarly, the Guidebook states that "Batch Plant Laborer (mining)" falls under Wage Order 16 but Defendant omitted the limitation to "mining" to suggest that all batch plant laborers are covered by Wage Order 16.[9] Guidebook at 34.  Likewise, both the "Rodder" and "Spreader" occupations, which are also covered by Wage Order 16, are limited to "concrete crew – mining."  Guidebook at 44-45. Aside from the fact that Defendant offers no evidence establishing the job duties of batch plant laborers, rodders or spreaders – or showing that these duties are comparable to the work Tejeda performed – Defendant's reliance on these jobs is misplaced because they are covered by Wage Order 16 only to the extent they are related to mining and construction.  There is no evidence in the record, however, that Tejeda's work was conducted in conjunction with either.

For these reasons, the Court finds that Defendant has not established at step one of the *Burnside* analysis that Tejeda's meal period claim is preempted on the basis that he worked in a construction occupation.

### c. *Burnside* Step Two: Whether Tejeda's Meal Period Claim is "Substantially Dependent" on analysis of the Local 665 CBA

Defendant also argued in the Motion that Tejeda's meal period claim was preempted at step two of the *Burnside* test because Local 665 CBA contains a section permitting on-duty meal

---

[9] Defendant also does not provide any evidence as to what a "batch plant laborer" does or establishing that Tejeda's job duties fall into this category.

periods under certain circumstances (Section 2.4) and Tejeda signed an On Duty Meal Period Agreement under that provision of the CBA. According to Defendant, the Court must interpret both Section 2.4 and the On Duty Meal Period Agreement Tejeda signed to evaluate his meal period claims.  The Court disagrees.

Defendant has not pointed to any ambiguity or disputed terms with respect to either the CBA or the On Duty Meal Period Agreement.  *See Fennix v. Tenderloin Hous. Clinic, Inc.,* 2020 WL 6462394, at *4 (rejecting employer's assertion that claim was "substantially dependent" on CBA under *Burnside* at step two where employer argued that CBA terms "shift" and "permit" would have to be interpreted in connection with meal period claim but at the motion hearing could not "provide any examples of situations in which interpretation of those terms would be necessary in the context of [the] case[;]" and where the court was "not . . . able to identify any ambiguity relevant to [employee's] claim that she was not provided rest breaks or uninterrupted meal periods."); *Stone.* 2016 WL 6582598, at *8 (E.D. Cal. Nov. 7, 2016) (rejecting employer's assertion that claim was "substantially dependent" on CBA under *Burnside* at step two where the defendant did not "indicate that there [was] any ambiguity in [CBA] provisions . . . or that there [was] a dispute between the parties as to interpretation of [its] terms.").  Furthermore, the latter is clear on its face, explicitly stating that the parties agreed to the meal period waiver because of the "nature of [Tejeda's] work as a Ready Mix Truck Driver, including but not limited to customer requirements, may prevent [Tejeda] from taking required duty-free unpaid meal period(s) of at least 30 continuous minutes[.]"  Miller Decl., Ex. I.  In other words, the agreement the parties signed is expressly limited to work as a ready mix driver. As Tejeda has narrowed his meal period claim to exclude that work, the On Duty Meal Period Agreement has no bearing on that claim.

Moreover, Defendant's suggestion that Tejeda's reliance on the express language of that agreement is misplaced because he "fails to address how referencing Plaintiff's work as a ready-mix driver necessarily excludes work performing other tasks such as driving a mobile sweeper[,]" Reply at 13, has no merit.  It is Defendant's burden to establish that Plaintiff's meal period claim is preempted, not Plaintiff's.  As the On Duty Meal Period Agreement is, on its face, based on Tejeda's duties as a ready-mix concrete truck driver, which undisputedly are different from the

duties of a mobile sweeper drive, Defendant has not met that burden.

For these reasons, the Court concludes that Tejeda's meal period claim is not preempted under Section 301 of the LMRA under step two of the *Burnside* analysis.

### 4. Claim Three (Rest Break Claim)[10]

#### a. Legal Standards Governing Rest Periods

Tejeda asserts his rest period claim under Cal. Labor Code section 226.7 and Wage Order 1. Compl. ¶¶ 55-62. Section 226.7 requires that employers afford workers uninterrupted rest periods as mandated by other state laws, including IWC orders, and subject to any exemptions contained in other state laws, including IWC orders. Cal. Lab. Code § 226.7(e).[11] Wage Order 1 contains the following rest period requirements:

> (A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3½) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.
>
> (B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.

Wage Order 1, § 12. Wage Order 1 does not contain exemptions to the rest period requirement for workers covered by a CBA. Wage Order 16, however, which contains similar rest period requirements, includes an exemption as to "any employee covered by a valid collective bargaining agreement if the collective bargaining agreement provides equivalent protection." Wage Order 16, § 11.

---

[10] As noted above, Defendant conceded at the April 19, 2024 motion hearing that Tejeda's work as a mobile sweeper driver does not fall within the commercial vehicle exemption under HOS regulations. Transcript at 32. Therefore, the Court need not address Defendant's preemption arguments under the FMSCA, which fail as applied to what remains of Tejeda's rest break claim, which is limited to his work as a mobile sweeper driver.

[11] Section 226.7 exempts workers in the security services industry under certain circumstances, *see* Cal. Lab. Code § 226.7(f)(1), (3). That exception does not apply here, however.

United States District Court
Northern District of California

1       b.  Discussion

2       Defendant's only remaining argument as to the rest break claim is that it is exempt under

3  Wage Order 16 because the Local 665 CBA contains "equivalent protection" and therefore, this

4  claim is preempted under the LMRA.  For the reasons discussed above, however, the Court finds

5  that Wage Order 16 does not apply to Tejeda's work as a mobile sweeper truck driver.  Therefore,

6  the Court concludes this argument fails as to Tejeda's work as a mobile sweeper driver.

7       **5.  Derivative Claims and Standing**

8       Defendant asserts that Plaintiffs' remaining claims are preempted to the same extent as his

9  first three claims are preempted and on the same grounds. Because Defendant has failed to

10  establish that any of Tejeda's claims are preempted, its argument as to the derivative claims fails

11  as well.  Furthermore, because the Court rejects Defendant's preemption arguments, Defendant's

12  standing argument is moot.

13  **IV.    CONCLUSION**

14       For the reasons stated above, the Motion is GRANTED as to Tejeda's meal and rest break

15  claims to the extent those claims are based on his work as a ready-mix driver.  In all other

16  respects, the Motion is DENIED.

17       **IT IS SO ORDERED.**

18

19  Dated:  August 1, 2024

20                                 _____

21                                 JOSEPH C. SPERO
                               United States Magistrate Judge

22

23

24

25

26

27

28

United States District Court
Northern District of California