Joseph Lavi, Esq. (State Bar No. 209776)
jlavi@lelawfirm.com
Jordan D. Bello, Esq. (State Bar No. 243190)
jbello@lelawfirm.com
Win Pham (State Bar No. 347399)
wpham@lelawfirm.com
**LAVI & EBRAHIMIAN, LLP**
8889 W. Olympic Blvd., Suite 200
Beverly Hills, California 90211
Telephone: (310) 432-0000
Facsimile: (310) 432-0001

Sahag Majarian II, Esq. (SBN 146621)
Email: sahagii@aol.com
Garen Majarian, Esq. (SBN 334104)
Email: garen@majarianlawgroup.com
**Majarian Law Group, APC**
18250 Ventura Boulevard
Tarzana, California 91356
Telephone: (818)609-0807
Facsimile: (818) 609-0892

Attorneys for PLAINTIFF
JUAN MANUEL TEJEDA on behalf of himself and others similarly situated.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUAN MANUEL TEJEDA, on behalf of himself and others similarly situated,<br><br>    PLAINTIFF,<br><br> vs.<br><br>VULCAN MATERIALS COMPANY; CALMAT COMPANY; AND DOES 1-100, INCLUSIVE,<br><br>    DEFENDANTS. | Case No.: 23-cv-00619-JCS<br><br>**DECLARATION OF JAMES TONEY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date: December 3, 2025<br>Time: 9:30 a.m.<br>Courtroom:    D<br><br>Judge: Hon. Joseph C. Spero |

## DECLARATION OF JAMES R.TONEY

1. I James Toney, declare as follows:

Based on request, the following analysis has been performed.

- Rounding analysis based on Camp v. Home Depot parameters.

- Rounding analysis based on See's Candy parameters.

- Rounding impact to Plaintiff J. Tejeda

Time records were provided for the period that spans February 6, 2022 through September 18, 2023. The employee count for the records provided is 169.

### 2. Qualifications

I graduated from California State University Long Beach with a Bachelor of Science in Accounting in December of 1988. Thereafter, I obtained my Master of Business Administration degree from Chapman University in December of 1994. I was the General Accounting Manager for the Boeing Company and Payroll Manager for Rockwell International Corporation prior to forming and becoming the principal in JTCalcs, which provides expert consulting services for wage and hour class actions. I have been retained and provided expert analysis in more than 2,200 wage and hour class action lawsuits, as well as several individual wage and hour claims. I have reviewed and analyzed data provided in numerous formats and for multiple business types – retail, entertainment, warehouse, construction, transportation, and medical services. Attached hereto as Exhibit "A" is my current CV.

### 3. Expert Compensation

The hourly rates charged by category are:

   a. Data Analysis - $200.00 per hour

   b. Deposition and Trial Support - $250.00 per hour

   c. Travel - $200.00 per hour

### 4. Documents Reviewed

The following documents provided from Plaintiff's attorney were used in preparing the opinions and conclusions contained within this declaration.

---

DECLARATION OF JAMES TONEY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

2

- VMC_00633 – 304501028-v1

- VMC_00634 – 304501206-v1

5. **Data Analysis – Fields and Example**

The files provided were for Non-Union and Union employees. The files were combined prior to analysis but a code was created in order to view the analysis by union status. The fields utilized in the analysis are listed below.

- Employee ID

- Punch In Time – this is an actual clock entry time stamp

- Punch Out Time – this is an actual clock entry time stamp

- Rounded Start Time – this is the time entry that is rounded based on company policy

- Rounded Out Time – this is the time entry that is rounded based on company policy

Prior to analysis a shift date field was created based on the "Punch In Time". Next the hours were calculated for each data line. The actual hours worked were calculated and compared to the calculated rounded hours. The result was the number of minutes by line, that represents the difference between the hours worked and the hours paid. Below is a sample calculation based on the shift April 7, 2022 for employee #126040.

| (A) | (B) | ( C ) | | | (F) | |
| --- | --- | --- | --- | --- | --- | --- |
| | | (B) - (A) | (D) | ( E ) | ( E ) - (D) | (F) - ( C ) |
| Punch In Time | Punch Out Time | Actual Hours | Rounded Start Time | Rounded End Time | Rounded Hours | Difference in Minutes |
| 4:56 AM | 2:00 PM | 9.07 | 5:00 AM | 2:00 PM | 9.00 | (4) |

In the above example the employee worked 9.07 hours but was paid for 9.00 hours which shows that 4 minutes of work were uncompensated. This formula is the basis of the rounding analysis.

6. **Rounding Analysis – Camp v. Home Depot**

My understanding of the Camp v. Home Depot, as it related to rounding, is that when calculating uncompensated time no credit is given for those shifts or shift segments that round favorably. For this calculation each shift segment stands alone. A shift segment is the time worked either before or after an unpaid break. The time worked prior to a meal break would be segment 1

DECLARATION OF JAMES TONEY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

and the time worked after the meal break would be segment 2. Below is an example of the shift segments and the rounding calculation using the February 6, 2023 shift for employee #126070.

| (A) | (B) | (C) | | | (F) | |
|---|---|---|---|---|---|---|
| | | (B) - (A) | (D) | (E) | (E) - (D) | (F) - (C) |
| Punch In Time | Punch Out Time | Actual Hours | Rounded Start Time | Rounded End Time | Rounded Hours | Difference in Minutes |
| 5:22 AM | 10:54 AM | 5.53 | 5:24 AM | 10:54 AM | 5.50 | (2) |
| 11:24 AM | 3:17 PM | 3.88 | 11:24 AM | 3:18 PM | 3.90 | 1 |

In this example Segment 1, prior to the meal break which was from 10:54 AM to 11:24 AM, the hours worked exceeded the hours paid by 2 minutes. The Segment 2 hours, that related to time worked after the meal break, showed that time paid was 1 minute more than the time worked. In the Camp v Home Depot process for calculating rounding, only Segment 1 time would be included. The unfavorable rounding for this example is unfavorable to the employee by 2 minutes. This process was repeated for all shift segments.

The number of time segments available for rounding analysis was 80,157. Below are the counts and average minutes by group.

| Group | Count | Unfavorable Shift Count | % | Total Unfavorable Minutes | Average Minutes Per Shift |
|---|---|---|---|---|---|
| Non-Union | 45,461 | 18,289 | 40.2% | (42,992) | (2.4) |
| Union | 34,696 | 9,132 | 26.3% | (52,539) | (5.8) |
| Total | 80,157 | 27,421 | 34.2% | (95,531) | (3.5) |

The number of employees in the punch data set was 169. Employees that experienced uncompensated time due to rounding numbered 148 or 87.5% of the employees.

**7. Rounding Analysis – Sees Candy**

The Sees Candy based analysis allows for an off set for rounding that is favorable to the employee. Using the same example, provided below, the rounding analysis takes into account the favorable rounding in Segment 2.

DECLARATION OF JAMES TONEY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

4

| (A) | (B) | ( C )<br>(B) - (A) | (D) | ( E ) | (F)<br>( E ) - (D) | (F) - ( C ) |
|---|---|---|---|---|---|---|
| Punch In<br>Time | Punch Out<br>Time | Actual<br>Hours | Rounded<br>Start Time | Rounded<br>End Time | Rounded<br>Hours | Difference in<br>Minutes |
| 5:22 AM | 10:54 AM | 5.53 | 5:24 AM | 10:54 AM | 5.50 | (2) |
| 11:24 AM | 3:17 PM | 3.88 | 11:24 AM | 3:18 PM | 3.90 | 1 |

The net rounding for the shift is the unfavorable rounding found in Segment 1 of 2 minutes offset by the favorable rounding in Segment 2 of 1 minute. The total net rounding for this shift is unfavorable for 1 minute.

For this analysis the punch data will be grouped in shifts. While the number of shift segments is 80,157, once grouped into shifts the count is 48,971. The breakdown for these shifts by group and category is provided below.

| Group | Shift<br>Count | Unfavorable<br>Count | % | Even<br>Count | % | Favorable<br>Count | % |
|---|---|---|---|---|---|---|---|
| Non-Union | 28,953 | 11,524 | 39.8% | 7,230 | 25.0% | 10,199 | 35.2% |
| Union | 20,018 | 6,150 | 30.7% | 8,824 | 44.1% | 5,044 | 25.2% |
| Total | 48,971 | 17,674 | 36.1% | 16,054 | 32.8% | 15,243 | 31.1% |

The Non-Union group shows an unfavorable shift count of 11,524. The related total unfavorable minute number is 27,768 which equates to an average of 2.4 minutes per unfavorable shift. The Non-Union favorable minutes are 23,984 spread over 10,199 shifts for an average of 2.4 minutes.

The Union group shows an unfavorable shift count of 6,150. The related total unfavorable minute number is 33,553 which equates to an average of 5.4 minutes per unfavorable shift. The Union favorable minutes are 21,834 spread over 5,044 shifts for an average of 4.3 minutes

When looking at the full group, the average number of 3.5 minutes per unfavorable shift is observed. The average favorable minutes for the full group is 3.0 minutes.

The number and percentage of employees that experienced at least 1 unfavorable shift are:

- Non-Union – 93 out of 95 employees or 98%

- Union – 55 out of 74 employees or 74%

DECLARATION OF JAMES TONEY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

5

- All employees – 148 out of 169 employees or 88%

8. **Analysis – Plaintiff, J. Tejeda**

The data set included 61 shift segments/shifts (no meal periods were observed for J. Tejeda. This data shows that J. Tejeda experienced unfavorable rounding in 36 or 59% for a total of 103 uncompensated minutes. The total uncompensated hour count is 103 minutes divided by 60 or 1.7 hours. The favorable minutes were found in 5 shifts for a total minute count of 9 or 0.15 hours. The number of segments/shifts that rounded evenly numbered 20.

To a reasonable degree of certainty, the contents of this document represent my opinions for this matter. I reserve the right to alter my opinions should additional information become available or clarified.

I declare under penalty of perjury under the laws of the State of California and under the laws of the United States of America that the foregoing is true and correct.

Dated: August 5, 2025

_____
James R. Toney

# Exhibit A



31 CHATEL DR
LITTLE ROCK, AR 72223
501-366-4164
JT@JTCalcs.com

JAMES TONEY "JT"

## Background

My consulting services for the last 20 plus years have centered in the area of class actions, including wage and hour and disability discrimination lawsuits. In addition to class actions, I have also provided analysis for a number of individual matters.  In 2016 JTCalcs was incorporated in Arkansas, and I serve as the principal for this corporation. I have performed analysis for wage and hour lawsuits in more than 2,100 matters and have given deposition or trial testimony on over thirty occasions in the last three years. Data has been provided in numerous formats and for multiple business types – retail, entertainment, warehouse, construction, transportation and medical services.

## Education

| | | |
|---|---|---|
| | Master of Business Administration | December 1994 |
| | Chapman University | |
| | Orange, California | |
| | | |
| | Bachelor of Science in Business / Accounting | December 1988 |
| | California State University, Long Beach | |
| | Long Beach, California | |

## Scope of Work

Consulting activities for wage and hour class actions include:

- Initial payroll data review - testing for completeness, trends, reasonability (examples – workweeks vs. store counts, turnover rates, salary trends)
- Calculation of FTE (full time equivalents) for damage exposure calculations
- Analysis of pay records in connection with legal requirements.
- Analysis of time punch data with focus on rounding and off-clock issues
- Preparation of damage calculations based on multiple scenarios.
- Damages split by category – visibility of wages, interest, and penalties
- Mediation support – adjust calculations / variables "real time" in order to facilitate settlement discussions.
- Calculation of settlement share/member
- Expert Witness testimony

## Case Experience (partial list)

| | |
|---|---|
| Vaquero v. Ashley Furniture Industries Inc. | Fink v. Commercial Fire Protection |
| Bright v. Glendale Adventist Medical Center | Rose v. Rabobank National Association |
| John v. Caesars Palace | Castaneda v. San Gabriel Transit Inc |
| Lopez v. InTouch Mobile Inc. | Bart v. Parkview Community Hospital |
| Wetzlich v. Shark Ninja | Hernandez v. PJ Las Vegas LLC |
| Adams, et al v.Blockbuster Inc. | Barry, et al v. Cost Plus |
| Kevin Joel, et al v. Athlete's Foot Group Inc. | Ware, et al v. McKesson Water Products Co. (Sparkletts) |

## Case Experience (partial list - continued)

Tett, et al v. Kragen Auto
Parks, et al v. Eastwood Insurance
Lasko-Hoellinger, et al v. UHS
St. Croix v. Cedar Fair
York v. CHOC
Burton v. 24 Hour Fitness USA
Hernandez v. Ruby's Diner Restaurants
Penny v. San Dimas Community Hospital
Castillo v. Long Beach Memorial Hospital
Aaron v. Wendy's of Las Vegas Inc.
Martinez v. SoCal Landscape
Figueroa v. Smith Delivery Services
Ceja v. Davis Development Company
Garcia v. HD Supply
Trevethan v. Big Orange
Troester v. Starbucks
Antezano v. Fossil

Cruz, et al v. Suntory Water (Hinckley & Schmitt)
Tomlinson, et al v. IndyMac Bank
Mutuc, et al v. Huntington Memorial Hospital
Corona v. HOAG Memorial Hospital
Nesbit v. ProCare Nurses LLC
Lopez/Arias v. Citrus Valley Health Partners
Duran v. Big5
Casanova v. Iron Mountain
Mina v. Amazon.com
Ridgeway v. Nabors Completion & Production Svcs
Bran v. International Forklift
Spears v. Health Net of California
Walden v. The State of Nevada – Dept of Corrections
Tatum v. FS Holdings
Robbins v Phillips 66 Company
Chavez v. Texas De Brazil
Alcala v. Laurus College

## Related Employment

**The Boeing Company**
Anaheim, California

 Manager, General Accounting – responsible for the direct supervision of accounting related (Overhead Distribution, Labor Control, Financial Statements, Payroll and Timekeeping).  Additional position responsibilities included:
oversight of monthly / annual closing schedules and process, setting of overhead rates and liaison with Information Systems on system maintenance and upgrades

**Rockwell International Corporation**
Anaheim, California

Manager, Payroll – The department was responsible for all payroll activities and benefit distribution for active employees.  The division population consisted of 4,000 employees (both union and non-union) with a majority in California but a presence in 9 additional states.

**The Capital Group Companies**
Brea. California

Supervisor, Corporate Finance & Accounting – supervise the group responsible for the monthly consolidated financial statements and facilitate the external year end audit process.  In addition, this group prepared corporate allocations, charitable foundation financials, share price, and tracking of investment activities.